# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

KENNETH L. TEPPER, in his capacity as the
LIQUIDATION TRUSTEE for the GFGI
LIQUIDATION TRUST,

|                        |
|------------------------|
|                        |

*Plaintiff,*

v.

KEEFE, BRUYETTE & WOODS, INC. AND
KBW, INC.,

*Defendants.*

Civil Action No.
**3:11-CV-2087-L**

Judge Lindsay

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS PLAINTIFF'S ORIGINAL COMPLAINT

Thomas J. Kavaler (admitted *pro hac vice*)
**CAHILL GORDON & REINDEL LLP**
80 Pine Street
New York, New York 10005
Telephone: (212) 701-3406
Facsimile: (212) 378-2230
tkavaler@cahill.com

Peter C. D'Apice
Texas Bar No. 05377783
**STUTZMAN, BROMBERG, ESSERMAN & PLIFKA
P.C.**
2323 Bryan Street, Suite 2200
Dallas, Texas 75201-2689
Telephone: (214) 969-4938
Facsimile: (214) 969-4999
dapice@sbep-law.com

*Counsel For Defendants Keefe, Bruyette & Woods,
Inc. and KBW, Inc.*

TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ......................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................... 3

STANDARD FOR A MOTION TO DISMISS .............................................................. 4

ARGUMENT..................................................................................................................... 5

I.    The Liquidation Trustee Lacks Standing to Pursue All of the Instant Claims
      Because GFG Failed to Reserve Any Claims Against KBW ........................................ 10

II.   The Liquidation Trustee Lacks Standing to Pursue Counts II, III and IV of the
      Complaint Because GFG Failed to Specifically Reserve Those Claims in its
      Liquidation Plan.............................................................................................................. 15

CONCLUSION................................................................................................................ 21

## TABLE OF AUTHORITIES

Page

Cases

*Browning* v. *Levy*, 283 F.3d 761 (6th Cir. 2002) .......................................................7n, 18

*In re Bigler LP*, 2010 WL 6972610 (Bankr. S.D. Tex. Nov. 9, 2010) ................................ 17-18, 18n

*In re Blue Water Endeavors, LLC*, 2011 WL 52525 (Bankr. E.D. Tex. Jan. 6, 2011) .............. *passim*

*In re Goodman Bros. Steel Drum Co., Inc.*,
  247 B.R. 604 (Bankr. E.D.N.Y. 2000).......................................................................7n

*In re Harstad*, 155 B.R. 500 (Bankr. D. Minn, 1993),
  *aff'd*, 1994 WL 526013 (D. Minn. 1994), *aff'd*, 39 F.3d 898 (8th Cir. 1994) ..................... *passim*

*In re Ice Cream Liquidation, Inc.*, 319 B.R. 324 (Bankr. D. Conn. 2005).........................................19

*Krim* v. *PcOrder.com, Inc.*, 402 F.3d 489 (5th Cir. 2005) ...................................................4

*Lujan* v. *Defenders of Wildlife*, 504 U.S. 555 (1992) .........................................................4

*In re Manchester, Inc.*, 2009 WL 2243592 (Bankr. N.D. Tex. July 16, 2009)................................15

*In re MPF Holding U.S. LLC*, 443 B.R. 736 (Bankr. S.D. Tex. Feb. 28, 2011),
  *appeal certified*, 444 B.R. 719 (Bankr. S.D. Tex. 2011) ...........................................11, 16

*In re National Benevolent Ass'n of the Christian Church*,
  333 F. App'x 822 (5th Cir. 2009) .........................................................................7, 10

*In re P.A. Bergner & Co.*, 140 F.3d 1111 (7th Cir. 1998)....................................................6

*In re Paramount Plastics, Inc.*, 172 B.R. 331 (Bankr. W.D. Wash. 1994)...................................... 7-8

*Tellabs* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).............................................5

*In re Texas Wyoming Drilling, Inc.*, 422 B.R. 612 (Bankr. N.D. Tex. 2010),
  *aff'd*, 647 F.3d 547 (5th Cir. 2011).................................................................... *passim*

*In re United States Brass Corp.*, 194 B.R. 420 (Bankr. E.D. Tex. 1996)........................................6n

*In re United Operating, LLC*, 540 F.3d 351 (5th Cir. 2008) ............................................. *passim*

*In re USN Communications, Inc.*, 280 B.R. 573 (Bankr. D. Del. 2002)...........................................7n

Rules

Fed. R. Civ. P. 12(b)(1)...................................................................................... 1, 4-5

Page

Statutes

Bankruptcy Code

    11 U.S.C. § 362 (2006), as amended ...................................................................12n

    11 U.S.C. § 548 (2006) ........................................................................12n, 15

    11 U.S.C. § 1123(b)(3) (2006)...................................................................*passim*

Treatises

Alan N. Resnick & Henry J. Sommer, COLLIER ON BANKRUPTCY (16th ed. 2011) ................ 5, 6n-7n

Other Authorities

H. Jeffrey Schwartz & Davin J. Hall,
    *Retention and Transfer of Avoidance Claims: Practice Tips and Pitfalls*,
    2009 ANN. SURVEY OF BANKR. LAW PART I:  COMMERCIAL BANKRUPTCY § 8 ........................6n

Keefe, Bruyette, & Woods, Inc. and KBW, Inc. (together, "KBW" or "Defendants") respectfully submit this memorandum of law in support of their Motion to Dismiss the Original Complaint (the "Complaint") of Kenneth L. Tepper, in his capacity as the Liquidation Trustee for the GFGI Liquidation Trust, pursuant to Federal Rule of Civil Procedure 12(b)(1).

## PRELIMINARY STATEMENT

This case presents an improper attempt by a liquidation trustee to assert claims that were extinguished when a debtor confirmed a plan of liquidation in Chapter 11 and relinquished all claims not expressly reserved for the Liquidation Trust in the debtor's plan or disclosure statement. This court need not (indeed, *may* not) reach the merits of the instant action because it lacks jurisdiction to consider the case in the first instance.

Kenneth L. Tepper, as Liquidation Trustee for the GFGI Liquidation Trust, lacks standing to bring this action on behalf of the GFGI Liquidation Trust because Guaranty Financial Group, Inc. ("GFG" or the "Debtor") failed specifically to reserve its purported claims against KBW in its confirmed Second Amended Joint Plan of Liquidation ("Plan of Liquidation" or the "Plan") or accompanying Amended Disclosure Statement (the "Disclosure Statement") as required under the Bankruptcy Code. 11 U.S.C. § 1123(b)(3)(B); *In re Texas Wyoming Drilling, Inc.*, 647 F.3d 547, 550 (5th Cir. 2011) ("'[i]f a debtor has not made an effective reservation, the debtor has no standing to pursue a claim that the estate owned before it was dissolved'") (quoting *In re United Operating, LLC*, 540 F.3d 351, 355 (5th Cir. 2008)).

It is vital to the prompt administration of a debtor's estate and to the protection of its creditors' interests that any and all claims the debtor intends to pursue after confirmation be "specific[ally] and unequivocal[ly]" reserved in the debtor's plan or disclosure statement so that, in voting to accept or reject a plan of liquidation, creditors are fully informed of all potential assets belonging to the estate. *See In re United Operating*, 540 F.3d at 355 (citation and internal quotation marks omitted). Though GFG disclosed its intent to pursue *other* claims against *other* defendants, the Plan on which GFG's creditors voted and which was confirmed contained no no-

tice of the instant action against KBW. *See generally* Plan of Liquidation, filed May 6, 2011 (Kavaler Decl. at Ex. 1); Disclosure Statement, filed February 10, 2011 (Kavaler Decl. at Ex. 2). The Liquidation Trustee has not identified any reason why its current claims against KBW were unknown or unknowable at the time GFG expressly reserved other claims against other defendants. Under the Fifth Circuit's demanding standard, GFG's purported blanket reservation of "any and all claims" later available is insufficient to preserve the previously unenumerated claims it now seeks to allege here: recent Fifth Circuit case law makes clear that a debtor must provide "sufficient information regarding [creditor] benefits and potential liabilities" to enable "an intelligent vote" on the subject plan. *In re Texas Wyoming Drilling*, 647 F.3d at 550-52 (approving reservation of action against former debtor shareholder under "specific and unequivocal" standard where disclosure statement "revealed the existence of the Avoidance Actions, the possible amount of recovery to which they would lead, [and] the basis for the actions (namely, pre-petition dividends and transfers to equity interest holders)," and identified the "prospective defendants") (citations and internal quotation marks omitted). *Compare In re United Operating*, 540 F.3d at 356 (affirming summary judgment dismissing common law claims where debtor plan purported to reserve "any and all claims" arising under the Bankruptcy Code as well as particular claims thereunder but did not indicate any intent to pursue claims for fraud, breach of fiduciary duty or negligence). Because GFG failed to make any such specific and unequivocal reservation regarding its purportedly fraudulent fee payment to KBW in either its Liquidation Plan or the accompanying Disclosure Statement, the Liquidation Trustee lacks standing to bring the instant action and the Complaint must be dismissed.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

GFG engaged KBW as a financial advisor in January 2008. Compl. ¶ 19. In connection with GFG's general financial strategy and planning, KBW and GFG entered into a "General Advisory Services Agreement," pursuant to which KBW would provide financial advisory and investment banking services to GFG beginning on or about February 27, 2008. *Id.* at ¶ 25. On or about April 1, 2008, in connection with the potential sale of all or part of GFG and with a prospective rights offering for GFG's equity, KBW and GFG executed a "Sale Advisory Agreement" and a "Rights Offering Advisory Agreement" under which KBW agreed to provide particular advisory and investment banking services to GFG. *Id.* at ¶¶ 31, 36. Following the successful completion of a two-part, $600 million private placement for which KBW served as GFG's Sole Placement Agent in Summer 2008, GFG made a payment of $19,875,000 to KBW on or about July 21, 2008 in consideration of services rendered pursuant to the parties' written agreements. *See id.* at ¶ 64. The total amount of GFG's payment reflected a multi-million dollar voluntary reduction by KBW of the fee contemplated by the parties' prior written agreements. Other than the formal termination of their engagement in December 2008, GFG and KBW had no further contact prior to GFG's bankruptcy.

On August 27, 2009, GFG filed a petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division. *Id.* at ¶ 10. On May 11, 2011, the Bankruptcy Court confirmed GFG's Plan of Liquidation. *Id.* at ¶ 11. That Plan, together with the Amended Disclosure Statement of February 10, 2011 and the Liquidation Trust Agreement of May 13, 2011, provided for the establishment of the GFGI Liquidation Trust, the appointment of Kenneth L. Tepper as Liquidation Trus-

---

[1]	The facts recited below are taken from the allegations of the Complaint, which Defendants accept as true for purposes of this motion only, and from public Bankruptcy Court filings on which the Complaint expressly relies and of which this Court may properly take judicial notice. *See infra* at 5. For the Court's convenience, copies of the bankruptcy documents referenced herein are provided as Exhibits to the Declaration of Thomas J. Kavaler ("Kavaler Decl.").

tee, and the transfer of all GFG's assets to the GFGI Liquidation Trust and the FDIC. *Id.* at ¶¶ 10-13. Neither the Plan of Liquidation nor the Disclosure Statement made any reference to KBW specifically or to financial advisors involved in GFG's 2008 financing generally. *See generally* Kavaler Decl. at Exhibits 1 (Plan of Liquidation) and 2 (Disclosure Statement).

Notwithstanding the GFG Plan's failure expressly or impliedly to reserve any claims against KBW, the Liquidation Trustee filed the instant action against KBW on August 22, 2011 seeking "$20 million in fees paid to KBW" in 2008 as an alleged fraudulent transfer, damages for alleged violations of federal securities laws in connection with KBW's purported shorting of GFG stock in 2008, and damages for alleged breaches of contract and the duty of good faith and fair dealing. Compl. ¶¶ 70-97. In so doing, the Trustee, who cannot possibly know more about the circumstances of KBW's engagement than GFG did, ventures to assert claims that GFG, armed with full knowledge of those facts, did not reserve. As demonstrated below, none of these claims was identified for GFG's creditors' consideration in the Plan of Liquidation and thus the Trustee's action must be dismissed.

## STANDARD FOR A MOTION TO DISMISS

In any action, bankruptcy or otherwise, the plaintiff bears the burden of establishing that it has standing to bring claims. *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Where a plaintiff fails to make this showing, dismissal is required under Rule 12(b)(1) because, under such circumstances, "the court lacks the statutory or constitutional power to adjudicate the case." *See Krim* v. *PcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005) (citation and internal quotation marks omitted); *In re United Operating*, 540 F.3d at 354 ("Standing is a jurisdictional requirement. . . .") (internal citation omitted); *In re Blue Water Endeavors, LLC*, 2011 WL 52525, at *4 n.14 (Bankr. E.D. Tex. Jan. 6, 2011) ("When a plaintiff cannot satisfy the standing requirements imposed by Article III, courts lack subject matter jurisdiction over a case.") (internal citations omitted).

In deciding a 12(b)(1) motion to dismiss for lack of standing, a court may consider "the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *In re Blue Water Endeavors*, 2011 WL 52525, at *3 (internal citations omitted). Although factual allegations in the complaint are presumed to be true for purposes of a motion to dismiss, allegations that are contradicted by facts of which a court may take judicial notice will not be taken as true. *See Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007). GFG's publicly-available Plan of Liquidation and accompanying Disclosure Statement, referred to, relied upon and implicated by the Complaint, may be considered in evaluating this motion to dismiss. *In re Blue Water Endeavors*, 2011 WL 52525, at *3-5 ("a proper analysis of standing in this context may incorporate consideration of related documents, such as the disclosure statement") (citing *In re Texas Wyoming Drilling, Inc.*, 422 B.R. 612, 629-30 (Bankr. N.D. Tex. 2010), *aff'd*, 647 F.3d 547 (5th Cir. 2011)).

## ARGUMENT

Plaintiff lacks standing to bring this lawsuit because GFG did not effectively reserve any claims against KBW when it liquidated under Chapter 11.

Once a bankruptcy plan is confirmed, the estate, along with any claim it may have against a third party, ceases to exist. *In re United Operating*, 540 F.3d at 355. The Bankruptcy Code provides an exception to this general rule in section 1123(b)(3): a claim *may* be retained by a representative of the debtor and pursued post-confirmation "if the plan of reorganization expressly provides for the claim's retention and enforcement by the debtor." *Id.* (quoting § 1123(b)(3)(B)) (internal quotation marks omitted). *See also* 7 Alan N. Resnick & Henry J. Sommer, COLLIER ON BANKRUPTCY ("COLLIER") ¶ 1123.02[3][b], at 1123-19 (16th ed. 2011) (under section 1123, a plan must 'provide[ ] for the retention of [ ] an action" in order to pursue that action postconfirmation); 11 U.S.C. § 1123(b)(3)(B) ("a plan may . . . provide for . . . the retention and enforcement by the debtor, by the trustee, or by a representative of the estate . . . any [ ] claim or interest [belonging to the debtor or to the estate]"); *In re Texas Wyoming Drill-*

*ing*, 647 F.3d at 550-51 (clarifying that the reservation requirement arising from section 1123(b)(3)(B) can be satisfied by disclosures made in either the bankruptcy plan or the accompanying disclosure statement).[2] Section 1123(b)(3) is, "at least in part, a notice provision. . . . Compliance with § 1123(b)(3) gives notice of [debtor's intent to pursue any potential causes of action that might enlarge the estate]. Only then are creditors in a position to seek a share of any such recoveries, contingent though they may be, and to have the mechanics of the preference-sharing spelled out in the plan. Creditors are in no position to do so if they are not on notice that the debtor retains the power to pursue recovery." *Harstad* v. *First American Bank*, 39 F.3d 898, 903 (8th Cir. 1994). If a debtor "has not made an effective reservation, the debtor has no standing to pursue a claim that the estate owned before it was dissolved. Without a proper retention, [the debtor's] ability to exercise control over that potential cause of action in the post-confirmation period expire[s] in the absence of a retained power to do so." *In re Blue Water Endeavors*, 2011 WL 52525, at *4 (internal citations, quotation marks and emphasis omitted).

While courts differ in determining the level of detail required to preserve pre-petition claims brought after confirmation — with some holding that a broad, categorical reservation is sufficient (*see, e.g., In re P.A. Bergner & Co*, 140 F.3d 1111, 1117 (7th Cir. 1998)) and others requiring a greater degree of precision (*see, e.g., Harstad*, 39 F.3d at 902)[3] — the Fifth Circuit

---

[2]    Though the explicit mandate for a reservation provision can be found in section 1123, additional authority for this requirement can also be found in section 1125, which demands that a debtor's liquidation disclosure statement contain "adequate information." *See* COLLIER ¶¶ 1125.01[2], 1100.09[2][c] ("[t]he test to be applied . . . is whether the disclosure statement contains information sufficient to permit a typical member of a class to make an informed investment judgment concerning the plan"); *In re United States Brass Corp.*, 194 B.R. 420, 424 (Bankr. E.D. Tex. 1996) (including "scheduled claims" among the "list of factors disclosure of which may be necessary to meet the statutory requirement of adequate information").

[3]    "There is some variation in the case law regarding the level of specificity necessary to satisfy section 1123 (in order to provide adequate notice to creditors that such actions would be retained)," but the "[m]ajority [l]ine of [c]ases . . . . have held that . . . . plan language reserving claims must be "'specific and unequivocal.'" H. Jeffrey Schwartz & Davin J. Hall, *Retention and Transfer of Avoidance Claims: Practice Tips and Pitfalls*, 2009 ANN. SURV. OF BANKR. LAW PART I: COMMERCIAL BANKRUPTCY § 8 ("[a]lthough many courts require a heightened degree of specificity, a minority of courts . . . enforce 'blanket reservations' that do not specifically identify all claims"). *See also* COLLIER ¶ 1123.02[3][b] ("While certain courts have required only a general

Footnote continued on next page.

has adopted a very demanding standard for claim preservation by requiring that an effective reservation be "specific and unequivocal." *In re United Operating*, 540 F.3d at 355 (claims belonging to the debtor are only preserved if the reorganization plan "expressly retain[s] the right to pursue such actions" in language that is "specific and unequivocal") (internal citations and quotation marks omitted); *In re Texas Wyoming Drilling*, 647 F.3d at 550 (if the debtor has not made a "specific and unequivocal" reservation of claims owned before its bankruptcy, the reorganized entity has no standing to pursue such claims post-confirmation); *In re National Benevolent Ass'n of the Christian Church*, 333 F. App'x 822, 826 (5th Cir. 2009) (ambiguity in plan reservation provision precluded successful preservation of causes of action that could otherwise have been brought post-confirmation). This specificity requirement "is a logical consequence of the nature of bankruptcy, which is designed primarily to secure prompt, effective administration and settlement of all debtor's assets and liabilities within a limited time" so that the debtor may be afforded a "fresh start." *See In re United Operating*, 540 F.3d at 355 (citation and internal quotation marks omitted); *see also In re Blue Water Endeavors*, 2011 WL 52525, at *3. Thus, under the Fifth Circuit's standard, a putative blanket reservation of "any and all claims" is insufficient to preserve a debtor's post-confirmation actions brought by the debtor's representative or liquidation trustee because such language fails to provide creditors with the requisite notice "to determine whether a proposed plan resolves matters satisfactorily before they vote to approve it." *In re United Operating*, 540 F.3d at 355-56 (citing *In re Paramount Plastics, Inc.*, 172 B.R. 331, 334 (Bankr. W.D. Wash. 1994), for the proposition that "absent 'specific and unequivocal' retention language in the plan, creditors lack sufficient information regarding their benefits and poten-

---

Footnote continued from previous page.

provision in the plan or disclosure statement reserving the reorganized debtor's right to pursue a particular type of action, other courts have suggested that the specific defendant against whom such claims may be asserted must be identified.") (comparing *In re USN Communications, Inc.*, 280 B.R. 573 (Bankr. D. Del. 2002), with *Browning* v. *Levy*, 283 F.3d 761 (6th Cir. 2002), and *In re Goodman Bros. Steel Drum Co.*, 247 B.R. 604, 608 (Bankr. E.D.N.Y. 2000)).

tial liabilities to cast an intelligent vote"). Bankruptcy courts throughout this Circuit have ex-
plained this approach as follows:

> Retention of claims within the confines of a plan confirmation process indicates
> an intent by the debtor to potentially pursue recovery and places creditors in a po-
> sition to seek a share of any such recoveries, contingent though they may be . . . .
> The concern inherent in the specificity requirement for retention is that a debtor
> may manipulate the plan process in order to benefit itself or blind-side one of the
> parties to its bankruptcy. Thus, *United Operating* stands for the proposition that
> creditors must be able to view a proposed plan and properly evaluate the credi-
> tor's benefits and potential liabilities so that they may then consider that informa-
> tion when they vote to approve or disapprove a plan.

*In re Blue Water Endeavors*, 2011 WL 52525, at *4 (quoting *In re Texas Wyoming Drilling, Inc.*,
422 B.R. 612, 624-25 (Bankr. N.D. Tex. 2010), *aff'd*, 647 F.3d 547 (5th Cir. 2011)) (internal ci-
tations and alterations omitted).

   The evil that section 1123's substantive provision is designed to avoid, and the policy
justification for the Fifth Circuit's strict interpretation of that provision, are best exemplified by
cases like *In re Harstad*, 155 B.R. 500 (Bankr. D. Minn. 1993), *aff'd*, 1994 WL 526013 (D.
Minn. Jan. 20, 1994), *aff'd*, 39 F.3d 898 (8th Cir. 1994) (cited with approval by *In re United Op-
erating*, 540 F.3d at 355-56). In *Harstad*, debtors Mr. and Mrs. Harstad sought to recover a pre-
petition transfer through the commencement of a post-confirmation preference action against
their former bank. The provisions of the Harstads' confirmed plan of reorganization did not
identify the purported claim (expressly or otherwise) and the Harstads did not propose any distri-
bution of the proposed recovery to their creditors. Practically speaking, the Harstads' suit sought
to recover an asset that had been concealed from their creditors: namely, an unenumerated pref-
erence claim whose potential cash value had not been incorporated into the provisions of the
confirmed plan. In response to the defendant's argument that they lacked standing to assert any
such claim, the Harstads cited a provision in their confirmed plan that purported to reserve bank-
ruptcy court jurisdiction over "all causes of actions [sic] between Debtors and any other party,
including but not limited to any right of Debtors to recover assets pursuant to the provisions of
the Bankruptcy Code." *Harstad*, 39 F. 3d at 902. The bankruptcy court rejected the Harstads'

-8-

effort and concluded that the language at issue did "nothing to alert a reasonable creditor of po-

tential liability or recovery arising from post-petition preference actions." *In re Harstad*, 155

B.R. at 510. "Vague statements, such as those contained in the plaintiffs' plan," it explained,

"will not and do not retain [a] preference action within the meaning of section 1123(b)(3)(B)."

*Id.* at 511.[4] Had the court concluded otherwise, the Harstads would have been permitted to de-

fraud their creditors by concealing the existence of a claim prior to confirmation and then realiz-

ing upon that claim for their own exclusive benefit once the creditors had been successfully de-

nied any opportunity to consider and assess the claim's effect on their own support for the pro-

posed plan of reorganization. This kind of deception, whether intentional or otherwise, is pre-

cisely what the bankruptcy law does not allow and precisely what the Fifth Circuit's strict inter-

pretation of section 1123 is intended to prevent.

---

[4]   Addressing the reason why § 1123(b)(3) requires "specific and unequivocal" language of reten-
tion, the bankruptcy court explained its conclusion as follows:

> [R]etention of preference actions is of great consequence to creditors. Usually,
> those entities which are the subject of preference actions are still creditors and
> have a right to vote on the debtor's plan. Creditors, exercising that right, must
> have the informed opportunity to reasonably understand what their benefits and
> what their potential liabilities are upon confirmation of that plan. However,
> when the debtor fails to specifically and unequivocally retain preference actions,
> creditors are effectively stripped of their right to information and are left to vote
> and accept a plan without realizing that they are potential targets of a post-
> petition complaint.
>
> Even unsecured creditors who are not potential preference defendants are inter-
> ested in potential preference recoveries. The potential amount of preference re-
> coveries and the proposed distribution of those recoveries enter into the decision
> of whether or not the creditors want to accept the plan's proposed treatment of
> unsecured creditors. . . . [For example,] since preferences could be recovered in
> a chapter 7 case, creditors need to know if the preferences will be pursued in a
> chapter 11 case before they vote on the plan and the court needs to know before
> it decides whether to confirm the plan. If the retention language is not clear and
> unequivocal, creditors and the court are misled into believing preferences were
> not assumed. Congress specifically said: If a debtor wants to preserve what
> would normally be lost its plan must provide for such retention.

*In re Harstad*, 155 B.R. at 509-10.

In the complaint in this action, the Liquidation Trustee bases his alleged authority to as-
sert claims against KBW exclusively on the definition of "Rights of Action" in GFG's Liquida-
tion Plan Glossary of Defined Terms. Compl. ¶¶ 13-16; *see also* n. 6, *infra.* For the reasons set
forth below, neither this definition nor the blanket statements of reservation that appear else-
where in GFG's plan and disclosure statement constitutes a "specific and unequivocal" reserva-
tion under Fifth Circuit law. Accordingly, each of the Trustee's claims must be dismissed.

**I.    The Liquidation Trustee Lacks Standing to Pursue All of the Instant
Claims Because GFG Failed to Reserve Any Claims Against KBW**

The standards outlined above make clear that, in this Circuit, a reservation of claims
against prospective defendants must be particular enough to put creditors on notice of all assets
potentially recoverable by the reorganized entity. *In re Texas Wyoming Drilling, Inc.*, 647 F.3d
547. Absent express references at least to categories of prospective defendants and estimates of
amounts recoverable, creditors lack adequate information to decide whether or not to accept a
plan. *Cf. id.* (holding that plan's reservation provision was sufficiently "specific and unequivo-
cal" where plan expressly identified category of entities encompassing defendants along with the
type of action, basis for the action, and possible amount of recovery). A reservation must be
specific enough to allow a reasonable creditor to expect that this particular defendant would later
be sued, and any ambiguity in a plan's reservation will be construed against the debtor consistent
with traditional rules of contractual interpretation. *See, e.g., In re National Benevolent Ass'n of
the Christian Church*, 333 F. App'x at 828-29 (dismissing malpractice claims against debtor
counsel where debtor asserted claim based on pre-petition services but plan's "Definitions" sec-
tion "indicate[d] an intent to reserve claims against 'Professionals' in respect to their conduct
related to *the bankruptcy proceeding* and not to reserve claims against 'professionals' generally")
("We need not decide which is the true or preferred interpretation of the plan's provisions in or-
der to decide the present case. We merely conclude that the plan's provisions do not specifically
and unequivocally reserve to [the debtor] the right to prosecute its claim against Weil Gotshal
arising out of the alleged attorney malpractice conduct that occurred prior to the [debtor's] bank-

-10-

ruptcy petition filing and proceedings.") (emphasis added); *In re MPF Holding U.S. LLC*, 443 B.R. 736, 744-45, 749 (Bankr. S.D. Tex. Feb. 28, 2011) (holding that reservation was sufficiently "specific" because it reserved the type of claim and identified the defendants in the debtor's schedule by name along with amounts paid to the defendants but adding that the reservation was *in*sufficiently "unequivocal" because "the phrase 'that may exist' creates an ambiguity as to what causes of action are reserved") ("[T]he Fifth Circuit requires that the parties to be sued after confirmation must be individually identified in the plan, and that failure to do so necessarily means that the bright-line test is not satisfied."), *appeal certified*, 444 B.R. 719 (Bankr. S.D. Tex. 2011). In its most recent treatment of the "specific and unequivocal" test, the Fifth Circuit held that a debtor had identified prospective defendants with sufficient specificity by including an estimated $4 million in prospective claims against "[v]arious pre-petition shareholders of the Debtor who might be sued for fraudulent transfer and recovery of dividends paid to shareholders" in its disclosure statement summary of the various claims and causes of action it might pursue on behalf of the estate. *In re Texas Wyoming Drilling*, 647 F.3d at 552 ("We hold that where the plan and disclosure statement reserved the right to pursue the Avoidance Actions against pre-petition shareholders . . . the reorganized debtor specifically and unequivocally retained these claims[.]") (citations and internal quotation marks omitted).[5]

GFG's Liquidation Plan and Disclosure Statement are conspicuously silent with respect to the Liquidation Trustee's current effort to recover the 2008 KBW fee or assert federal securities law or common law claims. Together, the documents purport to reserve only the following rights of action:

- "[A]ll Rights of Action, including Insider and Employee Avoidance Actions, [and] other Avoidance Actions." Liquidation Plan Article, V.H(2) (Kavaler Decl. at Ex. 1, p. 28). *See also* Liquidation Plan Article V.H(5)(m) (Kavaler

---

[5]   In so stating, the Fifth Circuit's decision expressly left open the possibility that "a debtor whose plan fails to identify *any* prospective defendants" may not have "standing to pursue post-conf[i]rmation claims." 647 F.3d at 552.

Decl. at Ex. 1, p. 31); Disclosure Statement, Articles 4.D, 8.H(2), 8.H(5)(1)(m) (Kavaler Decl. at Ex. 2, pp. 120-21, 149, 152).[6]

- "[A]ll Rights of Action . . . including, without limitation, all Rights of Action arising under sections 510(c), 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code in accordance with section 1123(b)(3)(B) of the Bankruptcy Code." Liquidation Plan, Exhibit C (Liquidation Trust Agreement), Article IV 4.2.12 (Kavaler Decl. at Ex. 1, p. 67).

- "[C]auses of action that the Debtors or the Estates may hold against any entity, including, without limitation, any claims, rights or causes of action arising under Chapter 5 of the Bankruptcy Code or any similar provisions of state law, or any other statute or legal theory." Disclosure Statement, Article 7.G (Kavaler Decl. at Ex. 2, p. 144).

- "[A]ll Rights of action the Debtors or their Estates may hold against Temple-Inland, or its former officers or directors . . . Insider and Employee Avoidance Actions, and other Avoidance Actions." Liquidation Plan, Article X.A (Kavaler Decl. at Ex. 1, pp. 39-40).

- "Rights of Action" against Temple-Inland Spin-Off, Officers and Directors of the Debtor, and "Other Individuals." Disclosure Statement, Article 6.H (Kavaler Decl. at Ex. 2, pp. 131-34).

- "[A]ny and all Rights of Action." Liquidation Plan, Article X.A (Kavaler Decl. at Ex. 1, p. 39). *See also* Liquidation Plan, Article X.B (Kavaler Decl. at Ex. 1, p. 41) ("Preservation of All Rights of Action Not Expressly Settled or Released"); Disclosure Statement, Article 4.D (Kavaler Decl. at Ex. 2, pp. 120-21) ("it is the expressed intention of the Plan to preserve rights, claims, and Rights of Action of the Debtors, whether now known or unknown").

---

[6]    The Liquidation Plan's "Glossary of Defined Terms" defines "Rights of Actions" as: "Any and all . . . causes of action . . . of any kind or character whatsoever, known or unknown, suspected or unsuspected, in contract or in tort, at law or in equity, or under any other theory of law, including (a) rights of setoff, counterclaim, or recoupment, and claims on contracts or for breaches of duties imposed by law; (b) claims pursuant to 11 U.S.C. § 362; (c) such claims and defenses as fraud, mistake, duress, and usury; (d) all Avoidance Actions; and (e) claims, actions, and causes of action related to the Spin-Off and claims, actions, and causes of action assigned to the Debtors pursuant to the Plan, including the claims against Temple-Inland assigned to the Debtors by the FDIC-Receiver pursuant to Plan Article X.A." Liquidation Plan, Exhibit A Glossary of Defined Terms (Kavaler Decl. at Ex. 1, pp. 56-57).

For the reasons outlined above and below, this catchall provision cannot reasonably be read to preserve a claim against KBW under Fifth Circuit law. Moreover, even if the Trustee seeks to cast its purported claims against KBW as an Avoidance Action, in particular, or as a fraudulent conveyance covered by its general reference to rights of action arising under section 548 of the Bankruptcy Code, neither of these bald references is sufficiently specific to have identified either KBW or the nature of this action for meaningful pre-confirmation review.

- Actions arising from certain enumerated "payments and transfers . . . which . . . may be avoidable under the Bankruptcy Code." Disclosure Statement, Article 4.D (Preference and Other Avoidance Litigation) & Exhibit 3 (Kavaler Decl. at Ex. 2, pp. 120, 225-33) (expressly identifying *forty-one* (41) entities — *not* including KBW— that received payments and transfers from the Debtor during the one year-period before the Petition Date which "may be avoidable").

- Unidentified "Rights of Action" which may be discovered after the "Debtors and Wilmington Trust have [ ] completed their investigation of potential objections to Claims and Rights of Action." Disclosure Statement, Article 4.D (Kavaler Decl. at Ex. 2, p. 120).

GFG was evidently mindful of the requirement to identify prospective defendants when it drafted the Plan and Disclosure Statement because it *did* expressly reserve claims against entities *other* than KBW and listed the value of potentially avoidable transfers to *other* parties. *See* Liquidation Plan, Article X.A (Kavaler Decl. at Ex. 1, p. 40) ("Claims that are reserved or reserved and assigned by the Debtors have been specifically set forth in the Disclosure Statement"); Disclosure Statement, Exhibit 3 (Kavaler Decl. at Ex. 2, pp. 225-33) (listing transfers potentially subject to avoidance). Indeed, the Disclosure Statement provides that certain payments made to Creditors during the 90-day period preceding Petition and made to Inside Creditors during the one-year period preceding Petition "may be subject to avoidance and recovery . . . as preferential and/or fraudulent transfers" and enumerates such payments in Exhibit 3 to the Disclosure Statement. Disclosure Statement, Article 4.D (Kavaler Decl. at Ex. 2, p. 120). Payments made to KBW are notably absent from this list of potential avoidance actions. KBW is also absent from Article 6.H of the Disclosure Statement, entitled "Potential Claims of the Debtors Against Third Parties," which specifically reserves claims against Temple-Inland and GFG Officers and Directors. Disclosure Statement, Article 6.H (Kavaler Decl. at Ex. 2, pp. 131-34); *see also* Liquidation Plan, Article X.A (Kavaler Decl. at Ex. 1, pp. 39-40) (retaining "all Rights of Action the Debtors or their Estates may hold against Temple-Inland or its former officers and directors . . .

Insider and Employee Avoidance Actions, and other Avoidance Actions").[7] Neither GFG's Plan nor its Disclosure Statement identified KBW or professional advisors to the 2008 financing generally as potential defendants.

In addition to its failure to identify KBW as a prospective defendant, either by name or by category, GFG also did not provide any meaningful estimate of amounts that could be recovered in future litigation against KBW. GFG's failure to estimate potential recovery amounts further confirms the lack of notice creditors had regarding the instant lawsuit. *Cf. In re Texas Wyoming Drilling, Inc.*, 647 F.3d 547 (reasoning that reservations were sufficiently "specific and unequivocal" in part because debtors had identified a potential recovery amount); *In re United Operating*, 540 F.3d at 356 ("If [the Debtor] had wanted to bring a post-confirmation action for maladministration of the estate's property during the bankruptcy, it was required to state as much clearly in the Plan. Had that been the case, the creditors could have reviewed the possible impact of future litigation on their claims and liabilities before voting to confirm the Plan.").

Neither GFG's assertion that, subject to its "continu[ing]" investigation of potential rights of action "all [] rights [we]re specifically reserved" (Disclosure Statement, Article 4.D ((Kavaler Decl. at Ex. 2, p. 120)) (emphasis omitted), nor its contention that "the Liquidation Agent shall have the right to pursue claims" against "other individuals or entities" (Disclosure Statement Article 6.H ((Kavaler Decl. at Ex. 2, p. 134)), constitutes adequate reservation of the instant claims against KBW. *See In re United Operating*, 540 F.3d at 356; *In re Blue Water Endeavors*, 2011 WL 52525, at *4 ("The use of generic language that merely reserves 'any and all claims' held by the debtor or that simply revests all estate property without details is insufficient to accomplish retention under 1123(b)(3)(B)") (internal citations omitted); *Harstad v. First*

---

[7]    As discussed above and below, permitting the Plan's vague reference to "other Avoidance Actions" to constitute a valid reservation of any possible cause of action against any potential defendant would defeat the purpose of section 1123(b)(3)(B), which protects creditors by imposing specific notice requirements on a debtor.

*American Bank*, 39 F.3d 898, 901 (8th Cir. 1994) (reorganized debtor lacked standing to bring post-confirmation preference claims even though disclosure statement recited that debtor had "not yet completed the analysis of prepetition preferential transfers subject to avoidance").

**II.    The Liquidation Trustee Lacks Standing to Pursue Counts II, III and IV of the Complaint Because GFG Failed to Specifically Reserve Those Claims in its Liquidation Plan**

Even if GFG had identified KBW as a prospective defendant of a § 548 claim in its Plan or Disclosure Statement, GFG's non-Bankruptcy Code claims for federal securities law violations, breach of contract, and breach of the duty of good faith and fair dealing would still warrant dismissal because these *claims* were not specifically reserved. In order "[f]or a debtor to preserve a claim, the plan must expressly retain the right to pursue such actions [and] [t]he reservation must be 'specific and unequivocal.'" *In re United Operating*, 540 F.3d at 355 (citations and internal quotation marks omitted). In other words, the plan (or the accompanying disclosure statement) must, at the very least, describe the category or categories of claims it intends to reserve. *See id.* at 356 (distinguishing purportedly reserved universe of claims authorized under the Bankruptcy Code from common law claims unmentioned in debtor plan). While GFG's Liquidation Plan and Disclosure Statement purport to reserve "preference and other avoidance" actions (*see, e.g.*, Disclosure Statement Articles 4.D, 8.H (Kavaler Decl. at Ex. 2, pp. 120-21, 149)) as well as "any claims, rights or causes of action arising under Chapter 5 of the Bankruptcy Code" (Disclosure Statement Article 7.G (Kavaler Decl. at Ex. 2, p. 144)), they do not contain *any* express reservations of the claims now sought to be asserted in Counts II, III, and IV of the Complaint. The talismanic peppering of both the Plan and the Disclosure Statement with blanket reservations of the debtor's "Rights of Action" (*see, e.g.*, Disclosure Statement, Article 4.D (Kavaler Decl. at Ex. 2, pp. 120-21)) does not save these counts. The Fifth Circuit has firmly held that such a blanket reservation is insufficient to preserve unenumerated claims. *See In re United Operating*, 540 F.3d at 356 ("[n]either the Plan's blanket reservation of 'any and all claims' arising under the Code, nor its specific reservation of other types of claims under various

-15-

Code provisions are sufficient to preserve the common law claims [reorganized debtor] now brings").

Nor are Counts II, III, and IV saved by the Plan's broad definition of "Rights of Action" as including "claims on contracts or for breaches of duties imposed by law" and "all Avoidance Actions." Plan, Exhibit A, Glossary of Defined Terms (126) (Kavaler Decl. at Ex. 1, pp. 56-57). GFG's decision to define "Rights of Action" broadly enough to include a host of unparticularized claims (whether specifically intended to circumvent the clear requirements of Fifth Circuit law or not) does not convert its generic boilerplate reservation of "All Rights of Action" into a specific and unequivocal reservation. *See In re Manchester, Inc.*, 2009 WL 2243592, at *4-*5 (Bankr. N.D. Tex. July 16, 2009) (where plan defined "Causes of Action" to mean "any and all actions . . . whatsoever, whether known, unknown . . . at law, in equity or otherwise[,]" plan nonetheless failed to specifically and unequivocally reserve claims for, *inter alia*, breach of fiduciary duty and negligent misrepresentation because "[w]hile the Plan's definition of Causes of Action is certainly broad enough to include them as claims the Debtors intended to preserve and transfer to the Litigation Trust, the Plan does not expressly identify these claims"). *See also In re MPF Holding U.S. LLC*, 443 B.R. 736, 748-50 (Bankr. S.D. Tex. 2011) (concluding that even though the plan reserved "Causes of Action" and "Avoidance Actions" and defined both terms broadly enough to include the preference claims at issue, *and* even though the plan identified the defendants by name in the attached schedules, the reservation provision was insufficient to preserve the claims because although "specific" it was *not* "unequivocal" in that it only reserved such actions "that may exist" rather than those that "do exist and will be prosecuted") ("The Plan's vagueness compounds the fact that the causes of action reserved for the Litigation Trustee amount to a blanket reservation. . . .") (citation and internal quotation marks omitted), *appeal certified*, 444 B.R. 719 (Bankr. S.D. Tex. 2011). As the Bankruptcy Court for the Eastern District of Texas has observed, "a general description of a cause of action is insufficient. Instead there must be an identifiable intent to bring such an action." *In re Blue Water Endeavors*, 2011

-16-

WL 52525, at *6 (holding that description of the defendant's alleged misrepresentations in disclosure statement was insufficient to preserve claims under section 1123(b)(3)(B) absent specific reference to "contemplation of litigation arising from those [alleged misstatements]"). In *In re Blue Water Endeavors*, the court held that the description of defendants' alleged bad conduct in one section of the disclosure statement combined with a subsequent reference to "Lawsuits or other claims" was insufficient to preserve claims under section 1123(b)(3)(B) because such a "generic reference" failed to fulfill "the purpose of the specificity requirement," *i.e.*, "to ensure that creditors are provided sufficient information, including a debtor's intentions regarding post-confirmation litigation, to determine how to vote on a proposed plan of reorganization." *Id.* ("Without more specific language stating the type of claim to be asserted or the category in which the potential cause of action may be properly placed, a creditor could not have properly surmised that post-confirmation litigation by [Debtor] was anticipated."). Moreover, even if the broad definition in the Plan's Glossary could be construed as an effective reservation of any claim falling within its penumbra (which, as discussed above, it cannot), it plainly does *not* include Count II of the Complaint for violations of the federal securities laws.

To the extent GFG deliberately attempted to skirt the Fifth Circuit's "specific and unequivocal" requirement through plan drafting, these attempts are unavailing. For example, in Article X of its Liquidation Plan, GFG asserted that "[u]nless a Right of Action is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order, the Debtors expressly reserve such Right of Action." Liquidation Plan, Article X.B (Kavaler Decl. at Ex. 1, p. 41). This Alice in Wonderland inversion of the Fifth Circuit's standard is plainly *not* the law and GFG's brazen attempt to pretend otherwise does not make it so. In fact, a Bankruptcy Court in the Southern District of Texas recently held that nearly identical language in a Chapter 11 Plan was "impermissibly vague under the Code" and failed to satisfy the Fifth Circuit's bright-line test for determining standing. *In re Bigler LP*, 2010 WL 6972610, at *14 (Bankr.

S.D. Tex. Nov. 9, 2010).[8] As the *Bigler* court explained, such generic "language attempts to re-serve any number of causes of action, but does not specifically describe these causes of action. As a result, it fails to meet the requirements the Fifth Circuit has placed upon retained causes of action." *Id.*

It is critical to the efficient and comprehensive administration of a debtor's estate (and thus to the overarching purpose of the bankruptcy system) that any retention provision be "specific and unequivocal" enough to afford creditors voting on the plan "sufficient information" to "cast an intelligent vote." *In re United Operating*, 540 F.3d at 355-56. Votes cannot be "intelligent" unless creditors are able to weigh "the possible impact of future litigation on their claims." *Id.* Stated simply: "The purpose [of the "specific and unequivocal" reservation requirement] is not to protect all defendants who may be sued at some future time . . . but to ensure that all creditors, who are considering the acceptance or rejection of a proposed plan of reorganization, are aware of the totality of the estate's assets so that they may vote accordingly." *In re Blue Water Endeavors*, 2011 WL 52525, at *4 (citing *In re Texas Wyoming Drilling, Inc.*, 422 B.R. 612, 624 (Bankr. N.D. Tex. 2010), *aff'd*, 647 F.3d 547 (5th Cir. 2011)). *See also Browning* v. *Levy*, 283 F.3d 761, 775 (6th Cir. 2002) ("blanket reservation was of little value to the bankruptcy court and the other parties to the bankruptcy proceeding because it did not enable the value of [debtor's] claims to be taken into account in the disposition of the debtor's estate").

---

[8]    The plan at issue provided: "Unless a Retained Cause of Action against an Entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order (including the Confirmation Order), the Debtors expressly reserve such Retained Cause of Action for later adjudication by the Liquidating Trust and, therefore, no issue preclusion, including without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel or laches shall apply to any Retained Cause of Action . . . Subject to the foregoing, any Entity to whom any Debtor has incurred an obligation or who has received services from a Debtor or a transfer of money or property of a Debtor, or who has transacted business with a Debtor . . . should assume that any such obligation, transfer or transaction may be reviewed by a Debtor after the Effective Date and may be the subject of an action after the Effective Date." *In re Bigler*, 2010 WL 6972610, at *14-*15.

Nothing in GFG's Plan or Disclosure Statement informed GFG's creditors of the possibility that GFG would seek a *twenty million dollar* recovery from KBW, and GFG's creditors were never put in a position to consider such prospective claims as part of the proposed liquidation as they were entitled to do, even assuming such claims were otherwise valid, which they are not. *See In re Blue Water Endeavors*, 2011 WL 52525, at *4 (quoting *Harstad* v. *First American Bank*, 39 F.3d 898, 903 (8th Cir. 1994)). The issue raised by this motion is not whether KBW should be protected by some technical requirement under the Bankruptcy Code, but rather whether GFG should be permitted to have induced its creditors to accept a liquidation plan that failed to disclose an allegedly significant potential asset of the estate — an outcome that would frustrate a fundamental feature of our bankruptcy system by depriving creditors of the opportunity to accurately assess the amounts GFG intended to recover after confirmation. Where, as here, the purported reservation language is ambiguous and vague at best, courts have consistently held that it must be construed against the debtor. *See In re Harstad*, 155 B.R. 500, 510 (Bankr. D. Minn. 1993) ("A reasonable creditor must understand that preferences are being retained . . . . As with all contracts, any ambiguity that exist in the chapter 11 plan is interpreted against the drafter[.]") (internal citations omitted), *aff'd*, 1994 WL 526013 (D. Minn. Jan. 20, 1994), *aff'd*, 39 F.3d 898 (8th Cir. 1994). In *In re Ice Cream Liquidation, Inc.*, cited favorably by the Fifth Circuit in *In re United Operating*, the court held that the debtor's reliance on a plan provision reserving "other powers and duties described in th[e] Plan or conferred upon it by operation of law" was unavailing because such language did nothing more than "create an ambiguity which must be construed against the Debtor." 319 B.R. 324, 333 (Bankr. D. Conn. 2005) (concluding that where a Bankruptcy plan specifically reserved actions under Section 544, 547, 548, and 550 of the Bankruptcy Code, it nonetheless failed to preserve claims for turnover actions under Section 542 of the Code). The generic reservation provisions at issue in GFG's Plan and Disclosure Statement are equally "ambiguous, meaningless, blanket statement[s] of no practical significance" because they did "nothing to alert a reasonable creditor of potential liability or recovery

arising from [this] post-petition [] action[]." *In re Harstad*, 155 B.R. at 510.  Without more, such provisions did not and could not under Fifth Circuit law preserve the claims that the Liquidation Trustee now purports to assert and thus the Complaint must be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiff lacks standing to bring this action and the Complaint must be dismissed with prejudice.

Dated: November 28, 2011

Respectfully submitted,

/s/ Thomas J. Kavaler
(admitted *pro hac vice*)
CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, New York 10005
Telephone: (212) 701-3406
Facsimile: (212) 378-2230
tkavaler@cahill.com

Peter C. D'Apice
Texas Bar No. 05377783
STUTZMAN, BROMBERG, ESSERMAN & PLIFKA P.C.
2323 Bryan Street, Suite 2200
Dallas, Texas 75201-2689
Telephone: (214) 969-4938
Facsimile: (214) 969-4999
dapice@sbep-law.com

*Counsel For Defendants Keefe, Bruyette & Woods, Inc. and KBW, Inc.*