**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

KENNETH L. TEPPER, IN HIS CAPACITY
AS THE LIQUIDATION TRUSTEE FOR
THE GFGI LIQUIDATION TRUST,

      Plaintiff,

v.

KEEFE, BRUYETTE & WOODS, INC. and
KBW, INC.,

      Defendants.

CIVIL CASE NO.  3:11-cv-2087-L

Hon. Sam A. Lindsay, U.S.D.J.

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFF'S ORIGINAL COMPLAINT**

E. Lee Morris
  TX Bar No. 00788079
**Munsch Hardt Kopf & Harr, P.C.**
500 N. Akard Street, Suite 3800
Dallas, TX 75201-6659
Telephone: 214.855.7500
Facsimile: 214.855.7584
lmorris@munsch.com

Hersh Kozlov (admitted pro hac vice)
Patrick Matusky (admitted pro hac vice)
Vincent J. Nolan III (admitted pro hac vice)
**Duane Morris LLP**
1940 Route 70 East, Suite 200
Cherry Hill, NJ 08003
856.874.4200 - Telephone
856.424.4446 – Facsimile
hkozlov@duanemorris.com
pmatusky@duanemorris.com
vnolan@duanemorris.com

Wayne Mack (admitted pro hac vice)
James Steigerwald (admitted pro hac vice)
**Duane Morris LLP**
30 South 17th Street
Philadelphia, PA 19103-4196
215.979.1000 - Telephone
215.979.1020 – Facsimile
wamack@duanemorris.com
jhsteigerwald@duanemorris.com

*Counsel For Kenneth L. Tepper, In His*
*Capacity As The Liquidation Trustee For The*
*GFGI Liquidation Trust*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND...................................................2

    A.    GFG's Need for Capital ...................................................................... 2

    B.    KBW Extracts an Exorbitant Fee for Its Minimal Services from Its
           Grossly Undercapitalized Client, GFG ................................................ 3

    C.    KBW Short Sells Its Own Client's Stock ............................................. 4

    D.    Guaranty Bank Fails and GFG Files for Bankruptcy............................ 4

    E.    The Plan Retains All Causes of Action for the Benefit of Creditors and
           Charges the Liquidation Trustee to Investigate and Prosecute Such Claims.......... 5

    F.    The Liquidation Trustee Investigates and Files Suit Against KBW...................... 7

    G.    KBW Is Not a Creditor of GFG, but It Challenges the Liquidation
           Trustee's Standing ........................................................................ 8

STANDARD FOR A MOTION TO DISMISS.............................................................8

ARGUMENT ...............................................................................................................9

I.    Section 1123 Does Not Require a Liquidation Trustee to Specifically and
    Unequivocally Identify Post-Petition Claims ......................................................9

    A.    Section 1123 Protects Creditors, Not Defendants................................. 10

    B.    The Liquidation Trustee Has Standing to Assert His Claims Against KBW
           Because He Was Appointed by the Bankruptcy Court and Is A
           Representative of the Estate............................................................ 12

    C.    The Case Law Cited by KBW Applies to Debtor-Plaintiffs, Not to
           Liquidation Trustees ..................................................................... 13

II.    The Liquidation Trustee Has Standing Even If the Specific and Unequivocal Test
    Applies .......................................................................................................17

    A.    There Is No Requirement That a Reorganization Plan Identify Specific
           Defendants or Even a Category of Defendants.................................... 17

    B.    The Liquidation Trustee Satisfied the Specific and Unequivocal Test by
           Identifying the Categories of Claims Brought in This Case ................... 21

CONCLUSION...........................................................................................................23

i

## TABLE OF AUTHORITIES

**Cases**

*In re Air Cargo, Inc.*, 2008 WL 2415039 (D. Md. June 11, 2008)..................................11

*Blue Water Endeavors, LLC v. AC & Sons, Inc. (In re Blue Water Endeavors, LLC), Adv. No. 10-1015, 2011 WL 52525 (Bankr. E.D. Tex. Jan. 6, 2011)*............................ 10-11, 15, 20

*Burlington Ins. Co. v. Christ for the Nations, Inc.*, Civil Action No. 3:05-cv-1164-L, 2006 U.S. Dist. LEXIS 57973 (N.D. Tex. Aug. 17, 2006) (Lindsay, J.)...........................9

*Citicorp Acceptance Co. v. Robison (In re Sweetwater)*, 884 F.2d 1323 (10th Cir.1989) ............12

*CLC Creditors' Grantor Trust v. Sonnenschein Nath & Rosenthal LLP (In re Commercial Loan Corp.)*, 363 B.R. 559 (Bankr. N.D. Ill. 2007)...........................11

*In re Crescent Resources, LLC*, 455 B.R. 115 (Bankr. W.D. Tex. 2011) ....................................22

*Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420 (5th Cir. 2001).......................9

*Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Operating LLC),* 540 F.3d 351 (5th Cir. 2008)........................................................................11, 14-15, 17-18, 20

*Elk Horn Coal Co. v. Conveyor Manufacturing & Supply, Inc. (In re Pen Holdings, Inc.),* 316 B.R. 495 (Bankr. M.D. Tenn. 2004) ..................................................9-10

*Harstad v. First American Bank (In re Harstad),* 39 F.3d 898 (8th Cir. 1994)................15, 18, 19

*Ice Cream Liquidation, Inc. v. Calip Dairies, Inc. (In re Ice Cream Liquidation, Inc.),* 319 B.R. 324 (Bankr. D. Conn. 2005) ...................................................18

*In re Mako*, 120 B.R. 203 (Bankr. E.D. Okla. 1990)..................................................19

*McFarland v. Leyh (In re Texas General Petroleum Corp.)* 52 F.3d 1330 (5th Cir. 1995) .........................................................11, 12-13, 16-17

*Moglia v. Keither (In re Manchester, Inc.)*, 2009 WL 2243592 (Bankr. N.D. Tex. July 16, 2009) ............................................................................17, 20, 21

*In re MPF Holding U.S. LLC*, 443 B.R. 736 (Bankr. S.D. Tex.), *appeal certified*, 444 B.R. 719 (Bankr. S.D. Tex. 2011) .......................................................17

*National Benevolent Ass'n of the Christian Church v. Weil, Gothsal & Manges, LLP (In re National Benevolent Ass'n of the Christian Church)*, 333 F. App'x 822 (5th Cir. 2009) ..............................................................................15

*Okpalobi v. Foster*, 190 F.3d 337 (5th Cir. 1999) .........................................................8

*P.A. Bergner & Co. v. Bank One, Milwaukee, N.A. (In re P.A. Berger & Co.)*, 140 F.3d
    1111 (7th Cir. 1998)......................................................................... 19-20

*Spicer v. Laguna Madre Oil & Gas II, LLC (In re Texas Wyoming Drilling, Inc.)*, 647
    F.3d 547 (5th Cir. 2011) ....................................................15, 17, 19, 21

*Torch Liquidating Trust v. Stockstill*, 561 F.3d 377 (5th Cir. 2009) ......... 10-11, 12, 17

*Ynclan v. Dep't of Air Force*, 943 F.2d 1388 (5th Cir. 1991) ........................9

**Statutes**

11 U.S.C. § 541(a)(1)...........................................................................10

11 U.S.C. § 1123.................................................................................9

11 U.S.C. § 1123(b)(3) ................................................................ *passim*

11 U.S.C. § 1123(b)(3)(B) ............................................................ *passim*

**Treatises**

5 Collier on Bankruptcy ¶ 1123.02 (Lawrence P. King ed., 15th ed. 1994)................17

Plaintiff, Kenneth L. Tepper ("Liquidation Trustee" or "Plaintiff"), in his capacity as the

Liquidation Trustee for the GFGI Liquidation Trust, respectfully submits this Memorandum of

Law in opposition to the Motion to Dismiss the Original Complaint filed by Defendants Keefe,

Bruyette & Woods, Inc. and KBW, Inc. (collectively, "KBW" or "Defendants").

## PRELIMINARY STATEMENT

This case arises out of KBW's improper and illegal use of material and confidential

information obtained from its clients Guaranty Financial Group Inc. ("GFG") and Guaranty

Bank and the exorbitant $20 million in fees KBW fraudulently obtained from GFG when GFG

and the Bank were insolvent, inadequately capitalized and approaching catastrophic failure.

After GFG filed for bankruptcy protection, the bankruptcy court approved a liquidation

plan that, among other things, transferred causes of action to a liquidation trust and appointed the

Liquidation Trustee to investigate and pursue meritorious causes of action for the benefit of

GFG's creditors.  The Liquidation Trustee, after retaining counsel and conducting a careful

investigation, which included extensive discovery, filed this action against KBW.

Even though the Liquidation Trustee was appointed by the Court to investigate and

pursue claims such as those brought in this case, KBW argues that the Liquidation Trustee has

no standing to bring claims under 11 U.S.C. § 1123(b)(3) because the claims were allegedly not

specifically identified in the plan of liquidation.  Section 1123(b)(3) is designed to preserve

assets of an estate for the benefit of creditors and to facilitate the early and efficient confirmation

of bankruptcy plans.  KBW seeks to turn Section 1123(b)(3) on its head by using it as a defense

to the detriment of GFG's creditors to defeat the purposes of the reorganization plan.

KBW improperly relies on case law that protects creditors from reorganized debtors who

attempt to bring undisclosed post-confirmation claims.  Those cases provide protection to

creditors from:  1) a debtor who conceals assets from creditors so that the debtor may later reap

the benefit of the assets for itself, at the expense of its creditors; and 2) a debtor who conceals causes of action from creditors to secure votes to confirm a reorganization plan only to later sue the creditors.  Neither of these evils is present here where the Liquidation Trustee seeks to bring his claims against KBW, on behalf of the creditors, not on behalf of a reorganized debtor.

As discussed below, the Fifth Circuit applies different tests to determine the standing of debtors and liquidation trustees to bring post-confirmation claims.  Plaintiff has standing under the Fifth Circuit's test applicable to liquidation trustees because (1) he was appointed by the bankruptcy court and (2) he represents the estate and its creditors.

KBW's argument, if accepted, would (1) result in the loss of a significant asset to GFG's creditors; (2) nullify significant portions of the court-approved bankruptcy plan that required the Liquidation Trustee to investigate and pursue all causes of action; (3) provide a defense to a non-creditor for serious wrongdoing simply because the victim filed for bankruptcy and could not fully investigate all claims before a confirmed reorganization plan; and (4) discourage debtors from confirming bankruptcy plans early and efficiently.  KBW's attempt to distort Section 1123(b)(3) must fail.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    GFG's Need for Capital

GFG was a thrift holding company engaged in providing financial services through several subsidiaries, including its primary asset, Guaranty Bank.  Prior to December 28, 2007, GFG and its subsidiaries were wholly-owned subsidiaries of Temple-Inland, Inc.  *See*, Defendants' Appendix, attached to the Declaration of Thomas J. Kavaler ("Def. App."), Exhibit 2, Disclosure Statement ("Discl. St.), Articles 4.A.1 & 4.A.2, 6.H.1, at 118.  On December 28, 2007, Temple-Inland spun-off GFG and its subsidiaries in a stock dividend transaction.  *See*, Def. App., Ex. 2, Discl. St., Article 6.H.1, at 132.

GFG knew that it was undercapitalized and needed to raise capital quickly in order to survive.  Def. App., Ex. 2, Discl. St., Article 5.D, at 122.  GFG engaged Keefe, Bruyette & Woods, Inc. to provide advice and analysis regarding the financial condition and prospects of GFG and its affiliates and to raise capital for GFG.  Pursuant to the various agreements between them, KBW was to protect GFG's confidential information and comply with all United States securities laws in its treatment of such information.  Plaintiff's Original Complaint ("Complaint"), ¶¶ 19-41.

**B.      KBW Extracts an Exorbitant Fee for Its Minimal Services from Its Grossly Undercapitalized Client, GFG**

KBW's capital raising efforts failed.  KBW structured a rights offering of GFG's stock, but failed to produce the investors necessary to make the rights offering successful.  Complaint, ¶ 42.  GFG then took matters into its own hands and raised capital from institutional investors with whom it already had relationships.  Ultimately, GFG raised approximately $600 million. Complaint, ¶¶ 60-61.

KBW played only a minor role in raising the $600 million.  The overwhelming majority of investors, both in terms of number of investors and dollar amount invested, were not introduced to GFG by KBW, but were pre-existing investors and/or persons with whom GFG already had relationships.  The investors that KBW introduced to GFG provided no more than $50 million of the $600 million raised in the private placements.  Complaint, ¶¶ 62-63.

Despite its meager efforts, KBW extracted an exorbitant fee of almost $20 million from the weakened and undercapitalized GFG.  Indeed, KBW's Chairman and CEO, John Duffy, publicly bragged that the fee was the largest in the firm's history and that KBW had been able to extract the fee from GFG because GFG, which desperately needed capital, was in no position to quarrel with its underwriters.  Complaint, ¶¶ 64-65.

### C.   KBW Short Sells Its Own Client's Stock

At the same time KBW was advising GFG and purporting to help it raise capital, KBW was betting against GFG in the public marketplace.  KBW took the non-public, confidential financial information it obtained from GFG and "shorted" GFG's stock for its own account, enriching itself at its client's expense.[1]  For example, on May 28, 2008, KBW established a material short position in GFG's stock, selling short such shares at $6.46 per share.  KBW's short selling undermined GFG's capital raising efforts by sending a negative message to the market from GFG's own investment banker.  It also directly impacted the price of GFG's stock, contributing to a price decline of 15% over the next ten trading sessions.  Indeed, after May 28, 2008, the stock never again traded above KBW's strike price of $6.46.  Complaint, ¶¶ 43-56.

### D.   Guaranty Bank Fails and GFG Files for Bankruptcy

GFG and its primary asset, Guaranty Bank, were only able to survive a little more than a year after GFG paid $20 million to KBW.  Guaranty Bank failed in one of the largest bank failures in history.  On August 21, 2009, the Federal Deposit Insurance Corporation, acting in its capacity as receiver ("FDIC-Receiver"), took over Guaranty Bank and sold its assets to another bank.  Complaint, ¶ 4.  GFG had, at best, very limited access to important documents taken by the FDIC-Receiver and/or transferred to the purchaser of the bank's assets.  Further, all of GFG's officers and directors resigned after the FDIC-Receiver's takeover of Guaranty Bank.

Stripped of its primary asset, on August 27, 2009 (the "Petition Date"), GFG and certain of its affiliates (namely Guaranty Group Ventures, Inc., Guaranty Holdings, Inc. I, and Guaranty Group Capital, Inc.) (collectively, the "Debtors"), were forced to file for bankruptcy protection

---

[1]     The terms short-selling, shorting, or going short have become infamous terms that are used as blanket terms for tactics employed by Wall Street investment banks that allow an investor to gain from the decline in price of a security.

under Chapter 11 of the Bankruptcy Code.[2]  Complaint, ¶ 10.  A Chief Restructuring Officer, who had not previously worked for GFG or Guaranty Banks, was then appointed to manage the affairs of GFG's estate.

The Debtors filed an Amended Disclosure Statement on February 10, 2011 (the "Disclosure Statement").  The Debtors filed the Second Amended Joint Plan of Liquidation for Guaranty Financial Group, Inc., et al. (the "Plan"), dated May 6, 2011, with the Liquidation Trust Agreement ("LTA") attached as Exhibit C thereto.  Def. App., Ex. 2, Discl. St., at 103; Ex. 1A, Plan, at 13, Ex. 1B, at 82.  The Plan and its associated documents were confirmed by the Bankruptcy Court by order dated May 11, 2011 (the "Confirmation Order").  Def. App., at 2. The Plan became effective on May 13, 2011 (the "Effective Date").  Complaint, ¶ 11.

### E.    The Plan Retains All Causes of Action for the Benefit of Creditors and Charges the Liquidation Trustee to Investigate and Prosecute Such Claims

The Plan, as confirmed by the Confirmation Order, expressly approved and appointed Kenneth L. Tepper to be the Liquidation Trustee of the GFGI Liquidation Trust.  Complaint, ¶ 11; Def. App., Ex. 1A, Plan, Article V.H.1, at 28; Def. App., Confirmation Order, ¶ K, at 7.  The Plan and the Liquidation Trust Agreement created the GFGI Liquidation Trust "on behalf of and for the sole benefit of the" creditors and for the "sole purpose" of liquidating the assets of the Debtors and their Estates (the "Liquidation Trust Assets")[3] and distributing the proceeds of the Liquidation Trust Assets to the creditors pursuant to the Plan.  Complaint, ¶ 12; Def. App., Ex. 1B, LTA, Article 1.1, at 83.  The GFGI Liquidation Trust was created to accept and hold all of

---

[2]      The cases were filed in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court"), and were jointly-administered under *In re Guaranty Financial Group, Inc., et al.*, Case No. 09-35582-bjh.  Complaint, ¶ 10.

[3]      Specifically, "Liquidation Trust Assets" is defined in the Plan as:  "All assets of the Debtors' Estates with the exception of the Professional Fee Reserve and amounts due to be paid or transferred to, or retained by, the FDIC-Receiver."  Def. App., Ex. 1A, Plan, Ex. A, Glossary, ¶ 90, at 53.

the assets of the Debtors and their Estates, reduce those assets to cash, and make distributions of

that cash to the unsecured creditors of the Debtors.  Def. App., Ex. 1A, Plan, Introduction and

Articles V.H.1 & V.H.2, at 17, 28-29; Def. App., Ex. 1B, LTA, Article 1.1, at 83; Def. App., Ex.

2, Discl. St., Article 1.A, 8.H.1 and 8.H.2, at 108, 148-49.  Each holder of a general unsecured

claim against the Debtors possesses a beneficial interest in the Liquidation Trust.  Def. App., Ex.

1A, Plan, Article IV.D, at 25.

The mission of the Liquidation Trustee is to investigate and prosecute those claims

defined as "Rights of Action" as well as "Avoidance Actions."  Def. App., Ex. 1A, Plan, Article

V.H.5.m, at 31.  The term "Rights of Action" is defined the Plan, as:

> Any and all claims, debts, demands, rights, defenses, actions, causes of action,
> suits, contracts, agreements, obligations, accounts, defenses, offsets, powers,
> privileges (including attorney/client privilege), licenses, and franchises of any
> kind or character whatsoever, known or unknown, suspected or unsuspected,
> whether arising before, on, or after the Petition Date, **in contract or in tort**, at
> law or in equity, or under any other theory of law, including (a) rights of setoff,
> counterclaim, or recoupment, and **claims on contracts or for breaches of duties
> imposed by law**; (b) claims pursuant to 11 U.S.C. § 362; (c) such claims and
> defenses as **fraud**, mistake, duress, and usury; (d) all **Avoidance Actions**; and (e)
> claims, actions, and causes of action related to the Spin-Off and claims, actions,
> and causes of action assigned to the Debtors pursuant to the Plan, including
> claims against Temple-Inland assigned to the Debtors by the FDIC-Receiver
> pursuant to Plan Article X.A.

Complaint, ¶ 14; Def. App., Ex. 1A, Plan, Ex. A, Glossary of Defined Terms, ¶ 126, at 56-57

(emphasis added).  The term "Avoidance Actions" is defined as:  "Any causes of action arising

under §§ 506, 510, 542, 543, **544**, 545, 546, 547, **548**, 549, **550**, 551, and 553 of the Bankruptcy

Code."  Complaint, ¶ 15; Def. App., Ex. 1A, Plan, Ex. A, Glossary, ¶ 10, at 48 (emphasis added).

In the Plan, the Debtors clearly and expressly reserved for the Liquidation Trust, and the

Liquidation Trustee clearly and expressly retained, these Rights of Action and Avoidance

Actions for later prosecution by the Liquidation Trustee.  Complaint, ¶ 12; Def. App., Ex. 1A,

Plan, Articles V.H, X.A and X.B, at 28-35, 39-41.  The Disclosure Statement provides notice

that these claims are being preserved for later investigation and prosecution by the Liquidation Trustee.  Def. App., Ex. 2, Discl. St., Articles 4.D, 6.H, 6.H.3, 7.G, at 120, 131, 134.

The Plan and the Disclosure Statement are also clear that the Rights of Action and Avoidance Actions were transferred to and became vested in the Liquidation Trust.  Complaint, ¶ 13; Def. App., Ex. 1A, Plan, Articles V.H.1 & V.H.2, IX.B, at 28-29, 38; Def. App., Ex. 2, Discl. St., Articles 8.H.1 and 8.H.2, at 148-49.  The Plan authorizes the Liquidation Trustee to pursue these claims for the benefit of the unsecured creditors of GFG.  Def. App., Ex. 1B, LTA, Article 1.1, at 83; Def. App., Ex. 1A, Plan, Articles V.H.5.m  and V.H.5.q, Article X, at 31, 32, 39-41; Def. App., Ex. 2, Discl. St., Article 7.G, at 134; *see also*, Def. App., Ex. 1B, LTA, Article 4.2.12, at 88 (empowering the Liquidation Trustee to, among other things, "prosecute, settle, dismiss, abandon or otherwise dispose of any and all Rights of Action …, including, without limitation, all Rights of Action arising under sections 510(c), 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code in accordance with section 1123(b)(3)(B) of the Bankruptcy Code").

The Plan stated, and the creditors and Bankruptcy Court understood, that all potential causes of action had not been, and could not have been, investigated by the time of confirmation.  Instead, the Plan assigned the Liquidation Trustee with the responsibility for investigating potential causes of action.  The Disclosure Statement notified creditors that some of the claims to be investigated would be against third parties.  Def. App., Ex. 2, Discl. St., Articles 6, 6.H, & 6.H.3, at 124-134, 131, 134.

### F.   The Liquidation Trustee Investigates and Files Suit Against KBW

After confirmation of the Plan and with bankruptcy court approval, the Liquidation Trustee retained counsel and pursued discovery, including several depositions and extensive document review to investigate potential claims.  During that process, the Liquidation Trustee and his counsel identified and investigated claims against KBW.

7

Based on the conduct outlined above, on August 22, 2011, Plaintiff filed his Complaint against KBW in this matter.  The Complaint alleges four counts.  Count I is for fraudulent transfers under §§ 544, 548, and 550 of the Bankruptcy Code.  Count II alleges securities fraud based on the insider trading and short-selling of GFG's stock outlined above as well as other conduct.  Count III alleges breach of contract for violations of the agreements between GFG and KBW and KBW's confidentiality obligations, and Count IV alleges breach of the duty of good faith and fair dealing by KBW in violation of the agreements and KBW's confidentiality obligations.  Complaint, at 19-25.

**G.      KBW Is Not a Creditor of GFG, but It Challenges the Liquidation Trustee's Standing**

KBW did not file a proof of claim in the GFG bankruptcy case.  Plaintiff's Appendix ("Pl. App.") at 1, ¶ 2; Pl. App. at 3-51, Ex. 1.  It was, therefore, not entitled to notice of the Plan, Liquidation Trustee Agreement, or the Disclosure Statement and was not entitled to, and did not, vote to approve or reject the Plan.  Pl. App. at 1-2, ¶ 3; Pl. App. at 52-64, Ex. 2.  Although the Plan expressly retained causes of action for the Liquidation Trustee, and charged the Trustee to investigate and pursue additional, unknown claims on behalf of GFG's creditors, including those discovered through the Liquidation Trustee's investigation, KBW now argues the Liquidation Trustee has no standing.

## STANDARD FOR A MOTION TO DISMISS

In considering a motion to dismiss for lack of standing, the court must "accept as true all material allegations of the complaint, and must construe the complaint in favor of the plaintiff." *Okpalobi v. Foster*, 190 F.3d 337, 350 (5th Cir. 1999).  As part of its review, "a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution

of disputed facts." *Burlington Ins. Co. v. Christ for the Nations, Inc.*, Civil Action No. 3:05-cv-1164-L, 2006 U.S. Dist. LEXIS 57973 (N.D. Tex. Aug. 17, 2006) (Lindsay, J.) (citing *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001)); *see also Ynclan v. Dep't of Air Force*, 943 F.2d 1388, 1390 (5th Cir. 1991)).

## ARGUMENT

### I.    Section 1123 Does Not Require a Liquidation Trustee to Specifically and Unequivocally Identify Post-Petition Claims

KBW argues that a plan of liquidation must identify specific claims, defendants, and the damages of potential claims to retain them for a liquidation trustee under Section 1123(b)(3). This would create a completely unworkable rule that would contradict the creditor protection policies of Section 1123, make Chapter 11 bankruptcies prohibitively expensive and administratively burdensome, and create unjust results by providing wrongdoers like KBW a windfall.

Under KBW's proposed interpretation, an estate could not preserve for the creditors the proceeds of an unknown claim because the reorganization plan could not specifically identify the potential defendant, cause of action, and damages sought for an unknown claim.  This would put creditors in the untenable position of either relinquishing unknown claims and assets or unduly delaying and complicating the confirmation process at the expense of all parties and the bankruptcy court.  That result would entirely undermine the purposes of Section 1123(b)(3), which are to (1) preserve the assets of the estate and (2) permit confirmation of reorganization plans "**before completion of the investigation and prosecution of causes of action**." *Elk Horn Coal Co. v. Conveyor Manufacturing & Supply, Inc. (In re Pen Holdings, Inc.)*, 316 B.R. 495, 499 (Bankr. M.D. Tenn. 2004).

A.     **Section 1123 Protects Creditors, Not Defendants**

The filing of a Chapter 11 petition creates an estate comprised of all the debtor's property, including causes of action belonging to the debtor. *See* 11 U.S.C. § 541(a)(1); *Torch Liquidating Trust v. Stockstill*, 561 F.3d 377, 386 (5th Cir. 2009). Section 1123 of the Bankruptcy Code allows a plan of reorganization to transfer to a trustee of a liquidating trust the authority to enforce an estate's claims and to distribute the proceeds of successful suits to the estate's creditors. *Id.* at 387.

The goal of Section 1123(b)(3) is to preserve an estate's causes of action for the benefit of creditors. *In re Pen Holdings*, 316 B.R. at 500. From its earliest beginnings, the aim of this provision "was to make possible the formulation and consummation of a plan before completion of the investigation and prosecution of causes of action . . . . Thus the statute was in furtherance of the purpose of **preserving all assets of the estate while facilitating confirmation of plan**." *Id.* (emphasis added) (citations omitted).

Consistent with the goal of preserving assets for creditors, "[t]he disclosure and notice afforded by a section 1123(b)(3) retention provision . . . is directed towards the estate's creditors, not the potential defendants on the reserved claims." *Id.* (citations and internal quotation marks omitted).

The case law analyzing standing to bring claims pursuant to Section 1123(b)(3) reflects the statute's purpose of preserving assets of the estate for the benefit of creditors. Where a reorganized debtor seeks to bring a post-confirmation claim, courts protect creditors by ensuring (1) that the debtor did not conceal claims from its creditors during bankruptcy so that it could seek recovery for itself by filing such claims post-confirmation; and (2) that the debtor did not conceal a claim it had against a creditor in order to win that creditor's vote in favor of a plan only to later sue the creditor. *See, Blue Water Endeavors, LLC v. AC & Sons, Inc. (In re Blue Water*

*Endeavors, LLC), Adv. No. 10-1015, 2011 WL 52525 at * 4 (Bankr. E.D. Tex. Jan. 6, 2011).  See also, Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Operating LLC),* 540 F.3d 351 (5th Cir. 2008); *Harstad v. First American Bank (In re Harstad),* 39 F.3d 898 (8th Cir. 1994).

On the other hand, liquidation trustees generally seek to bring post-confirmation claims on behalf of, and for the benefit of, creditors.  In that context, there is no danger that a liquidation trustee is concealing claims to the detriment of the creditors.  Accordingly, courts examining the standing of a liquidation trustee focus on the structure of a liquidation plan to ensure that the trustee is pursuing claims on behalf of the creditors.  *See McFarland v. Leyh (In re Texas General Petroleum Corp.)*, 52 F.3d 1330, 1335 (5th Cir. 1995); *Torch Liquidating Trust*, 561 F.3d at 387.

In light of the differing policies applicable to debtors and liquidation trusts, KBW's attempt to use Section 1123(b)(3) as a defense to the Liquidation Trustee's Complaint -- to the detriment of GFG's unsecured creditors -- turns Section 1123(b)(3) on its head and must fail. KBW did not file a proof of claim, did not vote on the plan of liquidation, and was not entitled to the notice protections of Section 1123(b)(3)(B).  The Liquidation Trustee seeks to pursue claims based on KBW's egregious conduct for the exclusive benefit of GFG's unsecured creditors, who will receive the proceeds of this action.[4]

---

[4]    Indeed, several courts have refused to allow non-creditors to invoke Section 1123(b)(3) to attack the adequacy of the plan's reservation of claims because Section 1123(b)(3) is not intended to protect non-creditors.  *See, e.g., CLC Creditors' Grantor Trust v. Sonnenschein Nath & Rosenthal LLP (In re Commercial Loan Corp.)*, 363 B.R. 559, 570 (Bankr. N.D. Ill. 2007) (holding defendants could not invoke the protection of Section 1123(b)(3) because "[s]pecific or general, adequate or inadequate, notice to a non-creditor about claims reserved in a proposed plan serves no purpose because a non-creditor cannot vote on whether the plan should be confirmed"); *In re Air Cargo, Inc.*, 2008 WL 2415039 at * 5 (D. Md. June 11, 2008) (stating that only a party to a plan can raise a Section 1123(b)(3) defense to assertion of a claim).

**B.** **The Liquidation Trustee Has Standing to Assert His Claims Against KBW Because He Was Appointed by the Bankruptcy Court and Is A Representative of the Estate**

Consistent with the policies outlined above, a liquidation trustee that seeks to enforce a claim of the bankruptcy estate after confirmation of a plan of liquidation must show that it has standing pursuant to Section 1123(b)(3)(B), by demonstrating "(1) that it has been appointed, and (2) that it is a representative of the estate." *In re Texas General Petroleum Corp.*, 52 F.3d at 1335; *see also, Torch Liquidating Trust*, 561 F.3d at 387.

The bankruptcy court's approval of a plan that clearly appoints a stranger to the estate, *i.e.*, an independent trustee, to administer the liquidating trust satisfies the first element. *In re Texas General Petroleum Corp.*, 52 F.3d at 1335; *Torch Liquidating Trust*, 561 F.3d at 387. In this case, the Plan identified and the court approved Kenneth L. Tepper, a stranger to the estate, to be the Liquidation Trustee. Mr. Tepper's appointment satisfied the first element of the standing test.

Although the courts apply a case-by-case approach to determine the second element, it is generally satisfied if a successful recovery by the trustee would benefit the debtor's unsecured creditors. *In re Texas Gen. Petroleum Corp.*, 52 F.3d at 1335; *Torch Liquidating Trust*, 561 F.3d at 387-88. "The primary concern is whether a successful recovery by the appointed representative would benefit the debtor's estate and particularly, the debtor's unsecured creditors." *In re Texas Gen. Petroleum Corp.*, 52 F.3d at 1335 (quoting *Citicorp Acceptance Co. v. Robison (In re Sweetwater)*, 884 F.2d 1323, 1327 (10th Cir.1989)) (internal quotation marks omitted).

The Liquidation Trustee easily satisfies the second element of the standing test. The Plan and the Liquidation Trust Agreement created the GFGI Liquidation Trust "on behalf of and for the sole benefit of the" creditors. Complaint, ¶ 12; Def. App., Ex. 1B, LTA, Article 1.1, at 83.

The "sole purpose" of the GFGI Liquidation Trust is to liquidate all of the assets of the Debtors and their Estates, including Rights of Action and Avoidance Actions, and to distribute the proceeds derived from that liquidation to the unsecured creditors.  Complaint, ¶ 12; Def. App., Ex. 1B, LTA, Article 1.1, at 83.  The Liquidation Trustee is empowered to investigate and prosecute Rights of Action and Avoidance Actions, along with other claims, for the benefit of the unsecured creditors.  Def. App., Ex. 1A, Plan, Articles V.H.5.m and V.H.5.q, at 31-32; Def. App., Ex. 1B, LTA, Article 4.2.12, at 88.  Therefore, just as in *In re Texas General Petroleum Corp.,* the Liquidation Trustee qualifies as a representative of the estate because he is monetizing all of the assets of the Debtors and their Estates for the sole benefit of the Estates' unsecured creditors.  *In re Texas General Petroleum Corp.*, 52 F.3d at 1335.  Simply put, there can be no question in this case that the Liquidation Trustee is serving as a representative of the estate.

**C.      The Case Law Cited by KBW Applies to Debtor-Plaintiffs, Not to Liquidation Trustees**

In its Motion, KBW ignores the test applied by the Fifth Circuit Court of Appeals in  *In re Texas General Petroleum Corp.* and *Torch Liquidation Trust*, both of which examined the standing of a liquidation trustee to bring claims under Section 1123(b)(3).  Instead, KBW suggests that the "specific and unequivocal" test set forth in *In re United Operating*, which examined the standing of a debtor to bring post-confirmation claims, somehow applies.  KBW is wrong.  The *In re United Operating* test applies to debtors, not liquidation trustees, who bring post-confirmation claims.

KBW argues that the specific and unequivocal test is necessary to prevent intentional or unintentional "deception" of creditors.  For example, KBW suggests that, without the specific and unequivocal test, debtors could effectively conceal assets (causes of action) and then seek recovery of those assets in post-confirmation litigation without sharing the proceeds with their

creditors.  *See* Defendants' Memorandum of Law, at 8-9 (citing *In re Harstad*, 155 B.R. 500

(Bankr. D. Minn. 1993), *aff'd*, 1994 WL 526013 (D. Minn. Jan. 20, 1994), *aff'd,* 39 F.3d 898 (8th

Cir. 1994)).  But those concerns have no application here because the Liquidation Trustee brings

his claims against KBW on behalf of, and for the benefit of, the estate's creditors.  And KBW is

not a creditor and has not been duped into voting for the Plan.

KBW ignores the critical distinction between post-confirmation claims pursued by

debtors on the one hand, and liquidation trustees, on the other hand.  The cases cited by KBW

primarily involve attempts by reorganized debtors to bring post-confirmation claims that would

not benefit the debtor's creditors.  For example, in *In re United Operating*, a reorganized debtor

attempted to bring a post-confirmation claim against the debtor's largest creditor and a

reorganization manager for mismanaging the estate's property during bankruptcy.  The debtor,

however, (1) was not pursuing the claims on behalf of the creditors,[5] and (2) was suing its largest

creditor without having provided notice to that creditor before confirmation of the plan.  540

F.3d at 353-54.

Throughout its decision in *In re United Operating*, the Fifth Circuit emphasized that the

plaintiff was a reorganized debtor.  The Court noted, "[f]or a *debtor* to preserve a claim, 'the plan

must expressly retain the right to pursue such actions.'  The reservation must be 'specific and

unequivocal.'"  *In re United Operating*, 540 F.3d at 355 (emphasis added).  Because a *debtor*

attempted to bring claims not specifically and unequivocally retained by it in the plan, and with

no benefit to the estate's creditors,[6] the Court held that the debtor-plaintiff had no standing to

---

[5]     The creditors' committee had already litigated and settled identical claims against the same parties.  540
       F.3d at n. 4.

[6]     The plan in *In re United Operating* provided the debtor with limited authority to bring only Bankruptcy
       Code claims post-confirmation on behalf of the estate.  540 F.3d at 356.  Those were not the claims at issue
       in *In re United Operating*.

pursue its claims.  Thus, consistent with the purpose of Section 1123(b)(3), *In re United Operating* protected creditors by ensuring that a *debtor* may only bring post-confirmation claims that the *debtor* has specifically and unequivocally retained and disclosed to creditors as part of a bankruptcy plan.

Similarly, *In re Harstad* involved a disgruntled reorganized debtor which concealed its intent to file a preference claim against a creditor in order to reap a windfall for itself, at the expense of its creditors, and to exact vengeance against a creditor who had accused it pre-bankruptcy of running a check-kiting scheme.  39 F.3d 898 (8th Cir. 1994).  To discourage other reorganized debtors from pursuing a similar path, other cases apply the *In re United Operating* rule to cases involving reorganized debtors attempting to assert claims.  *See*, *Spicer v. Laguna Madre Oil & Gas II, LLC (In re Texas Wyoming Drilling, Inc.)*, 647 F.3d 547 (5th Cir. 2011) (reorganized debtor); *National Benevolent Ass'n of the Christian Church v. Weil, Gothsal & Manges, LLP (In re National Benevolent Ass'n of the Christian Church)*, 333 F. App'x 822 (5th Cir. 2009) (reorganized debtor); *In re Blue Water Endeavors, LLC*, 2011 WL 52525 (reorganized debtor).

The rationale articulated by KBW in support of application of the specific and unequivocal test and the policies on which it is based have no bearing on the Liquidation Trustee's claims against KBW.  In this case, the proceeds of the litigation will exclusively benefit GFG's unsecured creditors, not any reorganized debtor.  Thus, there is no concern whatsoever that any assets were concealed to the detriment of the estate's creditors.

*In re Texas General Petroleum Corp.* demonstrates the different approach the Fifth Circuit takes to determine the standing of a liquidation trustee, as compared to a debtor, to bring a post-confirmation claim.  In that case, the plaintiff-liquidation trustee brought a fraudulent

15

conveyance claim against the defendant.  The defendant challenged the liquidation trustee's standing on the grounds that the claim belonged to the reorganized debtor, not the liquidation trustee.  52 F.3d at 1335.

Critically, on appeal, the Fifth Circuit cited *In re Harstad* as the test applicable to determine the standing of a debtor to bring post-confirmation claims.  *In re Texas General Petroleum Corp.*, 52 F.3d at 1335 n.4.  But the Fifth Circuit did **not** apply the specific and unequivocal test of *In re Harstad* to determine whether the liquidation trustee had standing. Instead, the Fifth Circuit applied the two part standing test applicable to strangers to the estate. Because the plan was "unclear with regard to the particular action sought to be enforced," the court applied principles of contract interpretation to determine whether the intent of the plan was for the liquidation trustee to bring the claims at issue.  *In re Texas General Petroleum Corp.*, 52 F.3d at 1336 n. 5.

The Fifth Circuit affirmed the bankruptcy court's holding that the liquidation trustee had standing to bring the avoidance actions even though the plan at issue was ambiguous. The Court supported this result by referring to the policy considerations underlying Section 1123(b)(3), explaining:  "[T]he result reached by the [bankruptcy] court comports with the general policy behind the assertion of avoidance actions.  The proceeds recovered in avoidance actions … should benefit the unsecured creditors."  *Id.* at 1336 (citing 5 Collier on Bankruptcy ¶ 1123.02, at 1123-23 (Lawrence P. King ed., 15th ed. 1994)).

Thus, the Fifth Circuit in *In re Texas General Petroleum* affirmed the bankruptcy court's holding that the liquidation trustee, not the debtor, had standing to bring the fraudulent conveyance claim at issue.  Far from requiring a liquidation trustee to establish a claim was "specifically" and "unequivocally" retained, the Fifth Circuit found the liquidation trustee had

standing even where the reorganization plan was ambiguous as to whether the trust retained the claim. *Id.*

In re United Operating*, which addressed the standing of a debtor, did not overrule or modify *In re Texas General Petroleum*, which reviewed the standard applicable to liquidation trusts. To the contrary, after *In re United Operating*, the Fifth Circuit has continued to cite *In re Texas General Petroleum* for the standing test applicable to liquidation trusts. *See Torch Liquidating Trust*, 561 F.3d at 387. There is no reason to depart from *In re Texas General Petroleum* here or to use Section 1123(b)(3) as a defense to the detriment of GFG's creditors.[7]

## II. The Liquidation Trustee Has Standing Even If the Specific and Unequivocal Test Applies

As noted above, the "specific and unequivocal" standard does not apply to the Liquidation Trustee's claims in this case. Nevertheless, even if that test did apply, the Plan, including the Liquidation Trust Agreement attached thereto, and the Disclosure Statement in this case satisfy that test.[8]

### A. There Is No Requirement That a Reorganization Plan Identify Specific Defendants or Even a Category of Defendants

KBW argues that, to meet the specific and unequivocal test, "[a] reservation must be specific enough to allow a reasonable creditor to expect that *this particular defendant* would later be sued." (Defendants' Memorandum of Law, at 10) (emphasis added). This is incorrect. Even

---

[7]   KBW does cite two bankruptcy cases applying the *In re United Operating* standard to claims brought by liquidation trusts. *See In re MPF Holding U.S. LLC*, 443 B.R. 736 (Bankr. S.D. Tex.), *appeal certified*, 444 B.R. 719 (Bankr. S.D. Tex. 2011), and *Moglia v. Keither (In re Manchester, Inc.)*, 2009 WL 2243592 (Bankr. N.D. Tex. July 16, 2009). However, neither case cited or reviewed *In re Texas General Petroleum* and there is no indication that the case was raised to those courts.

[8]   In assessing a motion to dismiss on the grounds of standing, courts may look to the plan of reorganization, the disclosure statement, and related documents to ascertain the preservation of claims. *See In re Texas Wyoming Drilling*, 647 F.3d at 551.

the cases cited by KBW establish just the opposite:  there is no requirement that a plan identify particular defendants in order to retain claims.

In *In re United Operating*, which KBW refers to as the watershed case establishing the specific and unequivocal standard in the Fifth Circuit, the court focused exclusively on whether a reorganization plan sufficiently identified the types of claims the debtor-plaintiff filed.  In that case, the court found the plan did not retain claims for, among other things, fraud, breach of fiduciary duty and negligence because the plan referenced only claims arising under the Bankruptcy Code.  540 F.3d at 356.  There is no language in *In re United Operating* even suggesting that a plan must identify specific defendants or categories of defendants to preserve a post-confirmation claim.

Further, in *In re United Operating*, the court cited *In re Harstad* and *Ice Cream Liquidation, Inc. v. Calip Dairies, Inc. (In re Ice Cream Liquidation, Inc.)*, 319 B.R. 324, 333 (Bankr. D. Conn. 2005) in support of the specific and unequivocal test.  *In re United Operating*, 540 F.3d at 355.  Both of those cases establish that a plan's reservation of a category of claims is sufficiently specific and unequivocal to provide standing for a debtor-plaintiff to bring post-confirmation claims.  *In re Harstad* provides that if the debtors had wished to pursue the preference claim at issue there, "they should have specifically reserved the right to pursue claims *of this sort* post-confirmation."  39 F.3d at 903 (emphasis added).  Similarly, the Fifth Circuit has construed *In re Ice Cream Liquidation* as holding that a "plan's *categorical reservation* of 'preference' claims was sufficiently specific" and that a "plan need not itemize individual transfers that may be pursued as preferential."  *In re United Operating,* 540 F.3d at 355 (citing *In re Ice Cream Liquidation*, 319 B.R. at 337-38) (emphasis added).

Further, the Fifth Circuit recently characterized its holding in *In re United Operating* as

requiring only the identification of categories of claims:

> We observe that *In re United Operating* focused exclusively on the retention of
> *claims*.  It never held that intended defendants must be named in the plan.  But it
> did cite with approval *In re Ice Cream Liquidation*, for the proposition that "the
> plan's categorical reservation of 'preference' claims was sufficiently specific;
> plan need not itemize individual transfers that may be pursued as preferential."  *In
> re United Operating*, 540 F.3d at 355 (citing *In re Ice Cream Liquidation*, 319
> B.R. at 337–38).  *In re Ice Cream Liquidation* held that while creditors must be
> told in the plan that avoidance actions will be pursued post-confirmation,
> individual prospective defendants did not have to be identified.  319 B.R. at 337–
> 38.
>
> *In re United Operating's* citation to *In re Ice Cream Liquidation's* holding
> supports the trustee's argument that a plan need not identify the prospective
> defendants.[9]

*In re Texas Wyoming Drilling*, 647 F.3d at 552 (emphasis in original).

This interpretation of *In re United Operating* is consistent with other cases utilizing the

specific and unequivocal test:

> The language of § 1123(b)(3)(B) is broad enough to encompass both those
> situations where a debtor is trying to preserve a potential future claim about which
> the affected party had no notice and the subset of claims that have already been
> filed (and are thus a matter of public record) but that remain unresolved.  …
> While there might be some logic in requiring "specific and unequivocal" language
> to preserve claims belonging to the estate that have never been raised, the statute
> itself contains no such requirement.  **The courts that have spoken of the need
> for "specific" and "unequivocal" language have focused on the requirement
> that plans unequivocally retain claims of a given type, not on any rule that
> individual claims must be listed specifically.**  *E.g., In re Harstad*, 155 B.R. 500,
> 510 (Bankr. D. Minn. 1993) (plan must specifically state that preference actions
> are retained), *aff'd*, 39 F.3d 898 (8th Cir.1994); *In re Mako*, 120 B.R. 203, 209
> (Bankr. E.D. Okla. 1990).

---

[9]     In *In re Texas Wyoming Drilling*, the Fifth Circuit declined to decide "whether a debtor whose plan fails to
identify *any* prospective defendants has standing to pursue post-confirmation claims against subsequently-
named defendants."  647 F.3d at 552.  This is not an issue in the present case, as the Defendants concede
that "the Plan and Disclosure Statement … *did* expressly reserve claims against entities *other* than KBW."
Defendant's Memorandum of Law, at 13.

*P.A. Bergner & Co. v. Bank One, Milwaukee, N.A. (In re P.A. Berger & Co.)*, 140 F.3d 1111, 1117 (7th Cir. 1998) (emphasis added).

Two lower court cases cited by KBW have interpreted and applied the specific and unequivocal test in the same manner.  The court in *In re Blue Water Endeavors, LLC* held that in order to retain a claim, a plan of reorganization need not identify specific defendants or set out in detail the allegations which may be brought, but "it must in some way address the *type* of claim to be preserved."  2011 WL 52525 at *5 (emphasis added) (citing to *In re United Operating*, 540 F.3d at 355).  Similarly, the court in *In re Manchester* held that avoidance actions were preserved by a categorical reservation and that the targets of such claims were not required to be identified.  2009 WL 2243592 (Bankr. N.D. Tex. July 16, 2009).

In any event, even though not required to put potential non-creditor third parties on notice of anything in order to retain the causes of action brought in this case, the Disclosure Statement notified creditors of potential claims to be investigated and pursued against third parties by the Liquidation Trustee for their benefit:

> The Debtors or the Liquidating Trustee may discover claims against other individuals or entities or additional claims against the parties identified in the course of prosecuting the claims discussed herein and obtaining documents from the related individuals and entities. . . . the Liquidation Agent shall have the right to pursue claims against third parties on behalf of the Estates for the benefit of the beneficiaries of the Liquidating Trust.

(Disclosure Statement, Article 6.H.3).

**B.     The Liquidation Trustee Satisfied the Specific and Unequivocal Test by Identifying the Categories of Claims Brought in This Case**

The Liquidation Trustee has standing to assert the claims brought in this action because the Plan and Disclosure Statement sufficiently identified the categories of claims against KBW even under the specific and unequivocal test.

In Count I of the Complaint, citing 11 U.S.C. §§ 544, 548 and 550, the Liquidation Trustee alleges that KBW received a fraudulent transfer of $20 million. The Plan retained, transferred and/or assigned to the Liquidation Trust all "Rights of Action" including all "Avoidance Actions." Def. App., Ex. 1A, Plan, Article V.H.2, at 28. The plan defines "Avoidance Actions" to include "Any causes of action arising under § § 506, 510, 542, 543, **544**, 545, 546, 547, **548**, 549, **550**, 551 and 553 of the Bankruptcy Code." Def. App., Ex. 1A, Plan, Exh. A, Glossary, ¶ 10, at 48 (emphasis added). This language easily satisfied the specific and unequivocal standard because it expressly retained for the Liquidation Trust the very claims asserted in Count I under Sections 544, 548 and 550 of the Bankruptcy Code. *See In re Texas Wyoming Drilling*, 647 F.3d at 552 (holding that listing by the plan and disclosure statement of "Avoidance Actions" as retained claims was sufficiently specific with respect to identification of the type of claims); *In re Manchester*, 2009 WL 2243592 at * 5 (categorical reservation of "Avoidance Actions" sufficiently specific under *In re United Operating* specific and unequivocal standard).

Count II of the Complaint alleges that KBW committed fraud in violation of the securities laws. Again, the Plan reserves all Rights of Action. The term Rights of Action is defined to include all claims and causes of action "in tort," "under any other theory of law," claims "for breaches of duties imposed by law," and "fraud" claims. Complaint, ¶ 14; Def. App., Ex. 1A, Plan, Exhibit A, Glossary, ¶ 126, at 56-57. The reservation for fraud, torts and breaches

21

of duties imposed by law includes the type of conduct alleged in Count II and put creditors on notice that the Liquidation Trustee might pursue such claims.  *See, e.g., In re Crescent Resources, LLC*, 455 B.R. 115, 129 (Bankr. W.D. Tex. 2011) (reservation of causes of action under "Chapter 5 of the Bankruptcy Code" and a listing of code sections sufficient under *In re United Operating* even though code section at issue in the case, § 542, was not part of list).

Counts III and IV allege breach of contract and breach of the duty of good faith and fair dealing. The Plan specifically reserved, and the term Rights of Action specifically encompassed, all claims and causes of action "in contract" and "claims on contracts or for breaches of duties imposed by law."  Again, these reservations expressly retained the claims brought in Counts III and IV and put creditors on notice that the Liquidation Trustee could bring such claims for breach of contract and the duty of good faith and fair dealing.

## CONCLUSION

For the reasons stated herein, the Motion to Dismiss should be denied.


Respectfully submitted,

Dated:  January 17, 2012


*s/ Hersh Kozlov* _____

E. Lee Morris                                   Hersh Kozlov (admitted pro hac vice)
   TX Bar No. 00788079               Patrick Matusky (admitted pro hac vice)
**MUNSCH HARDT KOPF & HARR, P.C.**      Vincent J. Nolan III (admitted pro hac vice)
500 N. Akard Street, Suite 3800            **Duane Morris LLP**
Dallas, TX 75201-6659                     1940 Route 70 East, Suite 200
Telephone: 214.855.7500                    Cherry Hill, NJ 08003
Facsimile: 214.855.7584                    856.874.4200 - Telephone
lmorris@munsch.com                         856.424.4446 – Facsimile
                                        hkozlov@duanemorris.com
**Counsel For Kenneth L. Tepper, In His**     pmatusky@duanemorris.com
**Capacity As The Liquidation Trustee For The**  vnolan@duanemorris.com
**GFGI Liquidation Trust**

Wayne Mack (admitted pro hac vice)
James Steigerwald (admitted pro hac vice)
**Duane Morris LLP**
30 South 17th Street
Philadelphia, PA 19103-4196
215.979.1000 - Telephone
215.979.1020 – Facsimile
wamack@duanemorris.com
jhsteigerwald@duanemorris.com

**Counsel For Kenneth L. Tepper, In His**
**Capacity As The Liquidation Trustee**
**For The GFGI Liquidation Trust**