**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

**KENNETH L. TEPPER, in his**
**capacity as the Liquidation Trustee**
**for the GFGI Liquidation Trust**

       **Plaintiff,**

**v.**                                 **Civil Action No. 3:11-CV-2087-L-BK**

**KEEFE BRUYETTE & WOODS, INC.,**
**and KBW, INC.,**

       **Defendants.**

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the District Court's *Order of Reference* (Doc. 41), this case has been referred to the undersigned for a recommendation on Defendants' *Motion to Dismiss*, (Doc. 25). For the reasons discussed below, the Court recommends that the motion be **GRANTED in part and DENIED in part**.

**BACKGROUND**

In August 2011, Plaintiff filed his complaint against Defendants, raising causes of action for fraudulent transfer under sections 544, 548, and 550 of the Bankruptcy Code and state law, violation of federal securities laws, breach of contract, and breach of the duty of good faith and fair dealing. (Doc. 1 at 19-25). Plaintiff alleged that the U.S. Bankruptcy Court for the Northern District of Texas had appointed him to serve as Liquidation Trustee of the GFGI Liquidation Trust, which had arisen out of the Chapter 11 bankruptcy of Guaranty Financial Group, Inc. ("GFG") and some of its affiliates. *Id.* at 4-5. Plaintiff claimed that, pursuant to the Second Amended Joint Plan of Liquidation for GFG, et al., (the "Second Amended Plan"), the

bankruptcy debtor had (1) reserved the right to bring certain causes of action, (2) assigned such rights to the GFGI Liquidation Trust, and (3) authorized him, as the Liquidation Trustee, to investigate and pursue such causes of action. *Id.* at 5.

Plaintiff alleged in his complaint that Defendant Keefe, Bruyette & Woods, Inc. ("KBW") was a financial services company and registered broker-dealer that GFG had hired to provide various financial services and raise capital. *Id.* at 6-7. KBW charged GFG nearly $20 million in fees for such services, which Plaintiff claims was exorbitant considering the services that KBW provided and the fact that GFG was insolvent and undercapitalized at the time. *Id.* at 16-18. Plaintiff contended that following GFG's payment to KBW, and as a result of KBW's unlawful short-selling of GFG stock, GFG was forced into Chapter 11 bankruptcy. *Id.* at 4, 12-14, 16. Plaintiff urged that, in addition to the other monetary damages it sought, the Court should find GFG's $20 million payment to KBW to be a fraudulent transfer under state and federal law such that GFG could avoid the transfer and recover the funds. *Id.* at 19-20. Defendants now move to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that Plaintiff lacks standing to pursue his claims. (Doc. 25).

## APPLICABLE LAW

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is either a "facial" attack complaining that the allegations in the complaint are insufficient to invoke federal jurisdiction or a "factual" attack in which the facts in the complaint that form the basis for subject matter jurisdiction are challenged. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). In a "facial" attack, the allegations in the complaint are taken as true, *Saraw Partnership v. United States*, 67 F.3d 567, 569 (5th Cir. 1995), while in a "factual" attack, the Court may

2

consider outside evidence relevant to the determination of jurisdiction.  *Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989).  In addressing a factual attack on subject matter jurisdiction, the Court may look to the following sources: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the Court's resolution of disputed facts.  *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).  The burden of proof regarding the existence of jurisdiction always rests with the plaintiff.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

## ARGUMENTS

Defendants contend in their *Motion to Dismiss* that Plaintiff does not have standing to pursue the claims in his complaint because GFG failed to specifically and unequivocally reserve its purported claims against Defendants in either its Second Amended Plan or accompanying Amended Disclosure Statement as required by the Bankruptcy Code.  (Doc. 26 at 5-6, 8-10) (citing 11 U.S.C. § 1123(b)(3)(B) (a bankruptcy plan may provide for the retention and enforcement of claims by the debtor, the trustee, or a representative of an estate)).  Defendants maintain that neither GFG's reservation of certain types of claims against other parties nor GFG's use of generic language to purportedly reserve all claims constituted a specific and unequivocal reservation of the fraudulent transfer claim against Defendants.  In particular, GFG's reservation did not (1) identify Defendants by name, (2) include Defendants on a list of potential avoidance actions the estate might file, (3) identify Defendants as being within a specified category of prospective defendants, or (4) provide any meaningful estimate of the amounts that could be recovered in future litigation against Defendants.  *Id.* at 11-12, 14-18.

3

For these same reasons, Defendants additionally urge that GFG did not specifically and unequivocally reserve the right to bring claims against Defendants for federal securities law violations, breach of contract, or breach of the duty of good faith and fair dealing. *Id.* at 19-24. Defendants argue that GFG should not be permitted to have induced its creditors to accept a liquidation plan that failed to disclose GFG's reservation of claims against Defendants, which would be a significant potential asset of the bankruptcy estate that the creditors should have been advised about. *Id.* at 23.

Plaintiff responds that section 1123(b)(3), governing the reservation of claims, is designed to preserve assets of an estate for the benefit of creditors and to facilitate the confirmation of bankruptcy plans, but Defendants are using the statute to defeat the purposes of the Second Amended Plan. (Doc. 35 at 5). Plaintiff points out that Defendants' argument, if accepted, would result in the loss of a significant asset to GFG's creditors and provide a defense to Defendants for serious wrongdoing simply because GFG could not fully investigate all potential legal claims before a confirmed reorganization plan was in place. *Id.* at 6. Plaintiff urges the Court that Defendants' attempt to use section 1123(b)(3) as a defense to Plaintiff's claims, to the detriment of GFG's unsecured creditors, defeats the purpose of that section, which is to protect the financial interests of creditors. *Id.* at 14-15. Further, Plaintiff contends that the Second Amended Plan did not have to "specifically and unequivocally" reserve claims against Defendants because that standard applies only to a debtor, not a liquidation trustee. *Id.* at 17-12.

Even if the "specific and unequivocal" test does apply, Plaintiff maintains that the Amended Disclosure Statement notified the creditors of potential claims to be pursued against third parties for the creditors' benefit. *Id.* at 20 (quoting Doc. 27, Exh. B2, Article 6.H.3 at p.

4

134) .  Plaintiff further contends that the Second Amended Plan sufficiently reserved claims against Defendants because it identified a category of potential defendants that included the Defendants in this case, and there is no requirement that the Second Amended Plan identify Defendants by name.  *Id.* at 21-26.  Plaintiff also argues that the Second Amended Plan reserved all "Rights of Action" including "Avoidance Actions," which encompasses any claim arising under sections 544, 548 and 550 of the Bankruptcy Code and thus includes Plaintiff's fraudulent transfer count.  *Id.* at 25 (citing Doc. 27, Exh. 1A, Article V.H.2 & Glossary, ¶ 10 at pp. 28, 48). Plaintiff maintains that the complaint's remaining counts are adequately specified because the Second Amended Plan reserves all "Rights of Action," which the Plan defines to include all claims and causes of action in tort, fraud and contract.  *Id.* at 25-26 (citing Doc. 27, Exh. 1A, Glossary, ¶ 126 at pp. 56-57).

Defendants reply, in relevant part, is that the boilerplate definition of "Rights of Action" is not specific enough to reserve Plaintiffs' causes of action because Plaintiff did not specify Defendants either by name or category in the Second Amended Plan or Amended Disclosure Statement.  (Doc. 38 at 6-8).

## LEGAL ANALYSIS

### A.    Factual Attack on Subject Matter Jurisdiction

In this case, Defendants raise a factual attack on the Court's subject matter jurisdiction because they contend that certain documents in the bankruptcy proceeding demonstrate Plaintiff's lack of standing.  *Irwin*, 874 F.2d at 1096.  Thus, the Court will consider the Amended Disclosure Statement and Second Amended Plan in making a recommendation because the documents are contained in the record, and the validity of them is not in dispute.  *Barrera-*

*Montenegro*, 74 F.3d at 659 (noting that the court can consider the complaint supplemented by undisputed facts in the record in addressing a Rule 12(b)(1) motion).

## B.      The "Specific and Unequivocal" Standard

Upon confirmation of a bankruptcy plan, the bankruptcy estate ceases to exist, and thus loses its status as a debtor "in possession." *In re United Operating, LLC*, 540 F.3d 351, 355 (5th Cir. 2008).  At that time, the debtor's or bankruptcy trustee's authority to pursue claims also expires. *Id.*  "This is a logical consequence of the nature of a bankruptcy, which is designed primarily to 'secure prompt, effective administration and settlement of all debtor's assets and liabilities within a limited time.'" *Id.*  Nonetheless, in some cases the Bankruptcy Code allows a reorganized debtor or liquidating trustee to bring a post-confirmation action on a "claim or interest belonging to the debtor or to the estate." *Id.* (quoting 11 U.S.C. § 1123(b)(3)).  Standing to bring such a claim is preserved only if the plan of reorganization expressly provides for the retention and enforcement of the claim by the debtor or liquidating trustee. *See id.* (citing § 1123(b)(3)(B), which provides that retention of claims can be made by the debtor or the bankruptcy trustee).

Section 1123(b)(3) functions primarily as a "notice provision," the purpose of which is not to protect defendants who may be sued at some future time, but to ensure that the creditors who are considering whether to accept a proposed plan of reorganization are aware of all of the estate's assets so they can vote accordingly. *Id.*  A debtor can provide its creditors with notice of any claim it wishes to pursue after confirmation, and it may do so in either the bankruptcy plan or a disclosure statement. *In re Texas Wyoming Drilling, Inc.*, 647 F.3d 547, 551 (5th Cir. 2011).  Affording proper notice allows creditors to determine whether a proposed bankruptcy plan

6

resolves matters satisfactorily before they vote to approve it.  "[A]bsent 'specific and unequivocal' retention language in the plan, creditors lack sufficient information regarding their benefits and potential liabilities to cast an intelligent vote."  *United Operating*, 540 F.3d at 355 (quotation omitted).

Although Plaintiff argues that he is not subject to the "specific and unequivocal" standard because he is the liquidating trustee, rather than the debtor, the Court of Appeals for the Fifth Circuit has made it clear that this is a distinction without a difference.  In *Texas Wyoming Drilling*, the court applied the specific and unequivocal standard even though the bankruptcy trustee had succeeded the debtor as the plaintiff in the action.  647 F.3d at 549, 552.  Plaintiff's reliance on *Texas General Petroleum* for the contrary proposition does not mandate a different result.  There, the court did not address the specific and unequivocal standard because it found that the plan of reorganization was ambiguous on its face as to whether a particular cause of action had been reserved for the debtor or for the liquidating trustee to bring.  *In the Matter of Texas General Petroleum Corp.*, 52 F.3d 1330, 1335-36 (5th Cir. 1995).  Here, the parties do not argue that the Second Amended Plan or Amended Disclosure Statement are ambiguous, and there is no dispute that any available causes of action are reserved for Plaintiff to bring in his capacity as liquidating trustee.

In applying the specific and unequivocal standard in *United Operating*, the Fifth Circuit held that the debtor had not reserved its right to pursue common law claims for fraud, breach of fiduciary duty, or negligence because the bankruptcy plan contained only a blanket reservation of "any and all claims" arising under the Bankruptcy Code and specifically reserved other types of claims under various Code provisions.  *United Operating*, 540 F.3d at 356.  The appellate court

7

cited with approval *In re Ice Cream Liquidation*, 319 B.R. 324, 337-38 (Bkrtcy. D. Conn. 2005), which held that a bankruptcy plan's categorical reservation of "preference" claims was sufficiently specific to confer standing to pursue such claims. *Id.* at 355.

Subsequently, in *Texas Wyoming Drilling*, the appeals court ruled that the debtor's bankruptcy plan and disclosure statement were sufficiently specific because those documents revealed (1) the existence of the avoidance actions, (2) the possible amount of any potential recovery, (3) the basis for the actions (namely, payment of pre-petition dividends and transfers to equity interest holders), and (4) that the reorganized debtor may pursue those claims. 647 F.3d at 549, 551. In particular, the disclosure statement identified the prospective defendants as "[v]arious pre-petition shareholders of the Debtor" who might be sued for "fraudulent transfer and recovery of dividends paid to shareholders." Thus, the court concluded that the trustee had standing to pursue an avoidance action against several former shareholders to void pre-petition dividend payments that the trustee classified as fraudulent transfers. *Id.* at 549, 552.

In so holding, the court rejected the argument that the bankruptcy plan and disclosure statement had to name the individual defendants who would be sued. *Id.* at 552-53. Indeed, the court approvingly noted precedent which found that the bankruptcy plan's categorical reservation of "preference" claims was sufficiently specific, such that the plan did not need to itemize individual transfers that may be pursued as preferential. *Id.* at 552 (citing *Ice Cream*, 319 B.R. at 337-38). Nevertheless, because the disclosure statement in that case identified the prospective defendants by category as "various pre-petition shareholders of the Debtor," the *Texas Wyoming Drilling* court left open the question of whether a debtor whose plan failed to identify *any* prospective defendants had standing to pursue post-confirmation claims against subsequently

8

named defendants.  *Id.*

The language from the Second Amended Plan and Amended Disclosure Statement that Plaintiff relies on to confer standing falls along the spectrum presented by *United Operating* and *Texas Wyoming Drilling*, and there is no binding precedent directly on point factually.  The Court will thus examine various non-precedential authorities discussing whether language similar to that used in this case is sufficiently specific and unequivocal.  There are two approaches within the Fifth Circuit for conducting this analysis:  the categorical approach and the specific approach, each of which will be discussed below.  *In re Crescent Resources, LLC*, 463 B.R. 423, 427 (Bkrtcy. W.D. Tex. 2011).

    *1. Categorical Approach*

Among the earliest cases to interpret the "specific and unequivocal" language of *United Operating* is *In re Manchester, Inc.*, 2009 WL 2243592 (Bkrtcy. N.D.Tex. 2009).  In *Manchester*, the litigation trust filed avoidance actions under sections 547, 548, 550, 502(d), and 510(c) of the Code as well as non-avoidance state and common law claims for breach of fiduciary duty, payment of illegal dividends, and negligent misrepresentation.  *Id.* at *1.  The defendants argued that the litigation trust lacked standing because the plan did not contain "specific and unequivocal retention language."  *Id.* at *2.  A review of the pertinent documents revealed that the plan of reorganization had transferred to a litigation trust all "Causes of Action," which was defined as "any and all claims, rights, defenses, third-party claims, [etc.]" as well as "Avoidance Actions."  *Manchester*, 2009 WL 2243592, *4.  The term "Avoidance Actions" was defined as "any and all Causes of Action which a trustee, the Debtors, the Estates or other appropriate party in interest may assert under sections 502, 510, 522(f), 522(h), 542,

543, 544, 545, 547, 548, 549, 550, 551, 553 and 724(a) of the Bankruptcy Code." *Id.* at *5.

The bankruptcy court determined that, based on *United Operating* and the Fifth Circuit's reliance on *Ice Cream*, the plan language was sufficient to retain the avoidance actions, which were included in the list of Code sections referenced in the plan. *Id.* at *5. Nevertheless, the court concluded that the trust's state and common law claims were not specifically reserved, because even though the plan's definition of "Causes of Action" was broad enough to include such claims, the plan did not expressly identify them. *Id. Manchester* thus held that listing causes of action by code section is sufficient, but reserving "any and all claims" is insufficient to retain a state law claim if that cause (i.e., breach of fiduciary duty) is not specifically mentioned. *Id.*

In 2010, the bankruptcy court ruled similarly in *In re Texas Wyoming Drilling, Inc.*, 422 B.R. 612 (Bkrtcy. N.D.Tex. 2010). That case involved two different debtors – TWD and Ranzino-Renda – and two different plans. The relevant language from the TWD plan defined "Estate Actions" as any claims, causes of action and enforceable rights for recovery or avoidance of obligations, transfers of property or interests in property recoverable or avoidable pursuant to Chapter 5 or other sections of the Bankruptcy Code. *Id.* at 620. The court opined that *United Operating* did not require that the plan identify specific claims against specific defendants. Rather, the court concluded, the Fifth Circuit's favorable citation to *Ice Cream* showed that a categorical reservation was sufficient to preserve standing for such claims. *Id.* at 626-27. The court thus determined that TWD had standing because the plan categorically reserved avoidance claims and was sufficient to put creditors on notice that such claims would be pursued. *Id.* at 628.

10

The relevant language from the Ranzino-Renda plan provided for the vesting of assets, including "all real and personal property of the estate . . . including but not limited to all causes of action . . . and any avoidance actions." *Id.* at 620-21.   The debtor wished to pursue claims for breach of contract, breach of the duty of care, and legal malpractice. *Id.* at 620.   The court determined that the bankruptcy plan's language was the type of "blanket reservation" deemed in *United Operating* to be insufficient to preserve for the reorganized debtor claims that belonged to the bankruptcy estate. *Id.* at 629.   Nevertheless, the court ruled that the disclosure statement was sufficiently specific to preserve the debtor's state claims because it identified the defendants by name and set forth the basis for the causes of action against them. *Id.* at 631.   Similarly, in *In re Blue Water Endeavors, LLC*, 2011 WL 52525, *6 (Bkrtcy. E.D.Tex. 2011), the court found that the reorganized debtor lacked standing to pursue certain common law claims because the disclosure statement used only generic language, i.e. "lawsuits or other claims against third-parties."

Most recently, a bankruptcy court summarized the above cases and concluded that listing causes of action by section was sufficiently specific and unequivocal, while generic reservations were insufficient. *In re Crescent Resources, LLC*, 463 B.R. 423, 437 (Bkrtcy. W.D.Tex. 2011). There, the plan stated that "Litigation Trust Assets shall include, but are not limited to, those Causes of Action arising under Chapter 5 of the Bankruptcy Code including those actions which could be brought by the Debtors under §§ 544, 547, 548, 549, 550, and 551 against any Person or Entity."   The court held that this language clearly included claims arising under sections 544, 548 and 550 and was thus sufficient to put those voting on the bankruptcy plan on notice that the trustee intended to pursue those claims. *Id.*   The language was also held sufficient to include a

11

claim under section 542 for turnover because "it seems far-fetched to believe that a creditor would not be on notice that the Trust anticipated pursuing turnover claims after confirmation." *Id.* at 438.  Next, the court addressed whether the language in the plan sufficiently reserved a state fraudulent transfer claim where the plan defined "Causes of Action" to include "Avoidance Actions," which were defined as "any actions commenced . . . pursuant to sections 544, 547, 548, 549, 550, or 551 of the Bankruptcy Code."  The court concluded that this language did not constitute a specific and unequivocal reservation of the state fraudulent transfer claim and ruled that the trust did not have standing to bring that claim.  *Id.* at 437-38.

## 2. *Specific Approach*

One lower court within the Fifth Circuit applies the specific and unequivocal standard more stringently than do the above cases.  *In re MPF Holding U.S. LLC*, 443 B.R. 736 (Bkrtcy. S.D.Tex. 2011).  In *MPF Holding*, the court ruled that "the Fifth Circuit requires that the parties to be sued after confirmation must be individually identified in the plan, and that failure to do so necessarily means that the bright-line test [from *United Operating*] is not satisfied."  *Id.* at 744. In other words, the court determined that the bankruptcy plan had to do more than just recite code sections; rather, it had to state that a specific cause of action would be brought against a named defendant.  *See id.* at 746.  Following issuance of his decision, the bankruptcy judge certified that issue for appeal directly to the Fifth Circuit, where the case has been fully briefed but not decided.  *In re MPF Holding US LLC*, Case No. 08-36084 at Doc. 600; *Jeff Compton v. Aker Pusnes AS, et al.,* U.S.C.A. Case No. 11-20478 (briefing completed on Apr. 12, 2012).

## 3. *Selection of Categorical Approach*

As can be seen from the above discussion, the majority of the Fifth Circuit's lower courts

have adopted the categorical approach to determining whether plan or disclosure language is

sufficiently specific and unequivocal.  The rule to be gleaned from such cases is that listing

causes of action by section is sufficiently specific and unequivocal, while generic blanket

reservations are insufficient.  *Crescent Resources*, 463 B.R. at 437.  Considering the weight of

authority and the fact that the purpose of avoidance actions is to allow the proceeds recovered in

such actions to benefit the estate's creditors, as opposed to the reorganized debtor, the

undersigned recommends adoption of the categorical approach.  *Texas Gen. Petroleum*, 52 F.3d

at 1336.

**C.      Language Cited by Plaintiff as Reserving Claims**

    *1.  Language in Amended Disclosure Statement.*

    Turning now to application of the specific and unequivocal standard in this case,

Plaintiff's first argument is that the following language in the Amended Disclosure Statement

constitutes a reservation of the claims in this case:

> The Debtors or the Liquidating Trustee may discover claims against other
> individuals or entities or additional claims against the parties identified in the
> course of prosecuting the claims discussed herein and obtaining documents from
> the related individuals and entities. . . the Liquidation Agent shall have the right to
> pursue claims against third parties on behalf of the Estates for the benefit of the
> beneficiaries of the Liquidating Trust.

(Doc. 27-1 at 134, Amended Disclosure Statement, Article 6.H.3; Doc. 35 at 20).

    This language does not (1) specify the potential existence of any sort of avoidance action,

(2) note the potential recovery that might have been available to the estate's creditors, (3) contain

any factual basis for potential claims, or (4) describe a specific category of potential defendants

such that Defendants would have had notice that they might be sued.  The language on which

Plaintiff relies is thus not sufficiently specific to have put the estate's creditors on notice that there might exist causes of action for avoidance, securities law violations, breach of contract, or tort against entities with which GFG had conducted pre-petition business. *See United Operating*, 540 F.3d at 355. Rather, it is the type of blanket statement that the Fifth Circuit has held to be insufficiently specific. *Id.* at 356. Thus, this provision of the Amended Disclosure Statement does not confer standing on Plaintiff to raise any of his claims.

    *2. Language in Second Amended Plan*

    Plaintiff next contends that the Second Amended Plan's reservation of all "Avoidance Actions" is sufficiently specific to encompasses his fraudulent transfer count. (Doc. 35 at 25). The language in question provides that following the confirmation of the bankruptcy plan, the debtors and estates shall be deemed to have transferred all assets to the liquidation trustee. (Doc. 27-1 at 28, Second Amended Plan, Article V.H.2; Doc. 27-1 at 48 & 50, Glossary at ¶¶ 10, 47). The assets listed as thereafter belonging to the trustee are (1) cash, (2) all causes of action, including insider and employee avoidance actions, other avoidance actions, and assigned claims, and (3) all other property interests, rights, claims, defenses and causes of action of the debtors or estate. *Id.*, Second Amended Plan, Article V.H.2. The term "Avoidance Actions" is defined as "[a]ny causes of action arising under §§ 506, 510, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code." *Id.*, Glossary at ¶ 10.

    While the cited language does not (1) note the potential recovery available, (2) contain any factual basis for potential claims, or (3) describe a specific category of potential defendants, under the rationale set forth in the cases applying the categorical standard, it is sufficient to preserve an avoidance action because that action and the applicable Code section are specifically

14

referenced.  *Crescent Resources*, 463 B.R. at 437; *Texas Wyoming Drilling*, 422 B.R. at 620,

626-28; *Manchester*, 2009 WL 2243592 at *2.  Plaintiff thus has standing to pursue an avoidance

action on behalf of the bankruptcy estate.

Last, Plaintiff argues that his securities fraud, breach of contract, and breach of duty

claims are preserved because the Second Amended Plan reserves to the trustee all "Rights of

Action."  (Doc. 27-1 at 28, Second Amended Plan, Article V.H.2; Doc. 35 at 21-23).  The term

"Rights of Action" is broadly defined in the Glossary of the Second Amended Plan as

> [a]ny and all claims . . .  of any kind or character whatsoever, known or unknown,
> suspected or unsuspected, whether arising before, on, or after the Petition Date, in
> contract or in tort, at law or in equity, or under any other theory of law, including
> (a) rights of setoff, counterclaim, or recoupment, and claims on contracts or for
> breaches of duties imposed by law; (b) claims pursuant to 11 U.S.C. § 362; (c)
> such claims and defenses as fraud, mistake, duress, and usury; (d) all Avoidance
> Actions; and (e) claims, actions, and causes of action related to [GFG's] Spin-Off
> and claims, actions, and causes of action assigned to the Debtors pursuant to the
> Plan, including claims against Temple-Inland assigned to the Debtors by the
> FDIC-Receiver.

(Doc. 27-1 at 56-57, Second Amended Plan, Glossary ¶ 126).  While it is a close call, the Court

finds that Plaintiff specifically and unequivocally reserved his breach of contract claim by

including actions in contract in the definition of "Rights of Action."  This differs from the

generic language that has been found to be insufficiently specific.  *See Texas Wyoming Drilling*,

422 B.R. at 620, 629 ("all causes of action" found to be impermissible blanket reservation);

*Manchester*, 2009 WL 2243592 at *2 ("any and all claims" held to be insufficiently specific).

Nevertheless, the Court does not find that Plaintiff's reservation of "claims in tort" and

"such claims and defenses as fraud" is sufficiently specific to put creditors on notice that either a

tort action for breach of the duty of good faith and fair dealing or a federal securities fraud action

might be brought.  *Cf. Texas Wyoming Drilling*, 647 F.3d at 549, 551-52 (holding that the

disclosure statement adequately identified prospective defendants who might be sued for

"fraudulent transfer and recovery of dividends paid to shareholders.").  Accordingly, Plaintiff

lacks standing to bring his tort and securities fraud claims, and those counts of the complaint

should be dismissed.  *Id.* at 552.

<u>**CONCLUSION**</u>

For the reasons set forth above, Defendants' *Motion to Dismiss* (Doc. 25) should be

**GRANTED in part and DENIED in part**.

**SO RECOMMENDED** on May 25, 2012.

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
<u>**NOTICE OF RIGHT TO APPEAL/OBJECT**</u>

A copy of this report and recommendation shall be served on all parties in the manner
provided by law.  Any party who objects to any part of this report and recommendation must file
specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. §
636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific
finding or recommendation to which objection is made, state the basis for the objection, and
specify the place in the magistrate judge's report and recommendation where the disputed
determination is found.  An objection that merely incorporates by reference or refers to the
briefing before the magistrate judge is not specific.  Failure to file specific written objections will
bar the aggrieved party from appealing the factual findings and legal conclusions of the
magistrate judge that are accepted or adopted by the district court, except upon grounds of plain
error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE