**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| KENNETH L. TEPPER, IN HIS CAPACITY AS THE LIQUIDATION TRUSTEE FOR THE GFGI LIQUIDATION TRUST, | CIVIL ACTION NO.  3:11-cv-2087-L |
| Plaintiff, | Hon. Sam A. Lindsay, U.S.D.J. |
| v. | |
| KEEFE, BRUYETTE & WOODS, INC. and KBW, INC., | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OBJECTIONS TO THE FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE REGARDING DEFENDANTS' MOTION TO DISMISS**

Plaintiff, Kenneth L. Tepper ("Liquidation Trustee" or "Plaintiff"), in his capacity as the Liquidation Trustee for the GFGI Liquidation Trust, respectfully submits this Memorandum of Law in Support of Plaintiff's Objections to the Findings, Conclusions and Recommendation of the United States Magistrate Judge Regarding Defendants' Motion to Dismiss.

**I.    PERTINENT FACTUAL BACKGROUND**

1.    This case arises out of Defendant, Keefe, Bruyette & Woods, Inc.'s ("KBW") improper and illegal use of material and confidential information obtained from its clients Guaranty Financial Group Inc. ("GFG") and Guaranty Bank and the exorbitant $20 million in fees KBW fraudulently obtained from GFG when GFG and the Bank were insolvent, inadequately capitalized and approaching catastrophic failure.

2.    Guaranty Financial Group Inc. ("GFG") retained KBW to provide advice and analysis regarding the financial condition and prospects of GFG and its affiliates and to raise

capital for GFG.  As part of the engagement, KBW agreed to protect GFG's confidential

information and to comply with all securities laws in its treatment of such information.

3.      KBW's efforts failed.  KBW extracted a fee of approximately $20 million from

GFG for its services, which was in no way justified by the minor role KBW played in raising

capital for GFG.  Worse yet, while KBW was advising GFG and purporting to help it raise

capital, KBW was betting against GFG in the public marketplace.  KBW took the non-public,

confidential financial information it obtained from GFG and "shorted" GFG's stock for its own

account, enriching itself at its client's expense.

4.      GFG filed for protection under the bankruptcy laws in August 2009.  GFG and

related debtors filed an Amended Disclosure Statement on February 10, 2011, and a Second

Amended Joint Plan of Liquidation, dated May 6, 2011 (the "Plan").  The bankruptcy court

approved the Plan on May 11, 2011 and it became effective as of May 13, 2011.

5.      As part of the Plan, all of the assets and estates of the debtors (not otherwise

disposed of by the Plan) were transferred to the GFGI Liquidation Trust.  The Plan charged the

Liquidation Trustee with the responsibility to investigate and prosecute claims on behalf of

GFG's creditors.

6.      After conducting a thorough investigation, the Liquidation Trustee filed a

Complaint against Defendants KBW and its parent, KBW Inc.  The Liquidation Trustee alleged

that Defendants received $20 million in fees that were fraudulent transfers (Count I) and that

Defendants committed securities fraud (Count II).  Further, the Liquidation Trustee alleged that

KBW breached its agreements with GFG (Count III) and the covenant of good faith and fair

dealing implied in those agreements (Count IV).

7.      Defendants filed a motion to dismiss the Complaint alleging that the Liquidation Trustee had no standing to bring such claims on the ground that they were not "specifically and unequivocally" reserved by the Plan.

8.      The Liquidation Trustee opposed Defendants' motion noting that the specific and unequivocal test applies to debtors, not liquidation trustees, that bring post-petition claims. Further, the Liquidation Trustee explained that the Plan satisfied the specific and unequivocal test in any event.

9.      Defendants' motion to dismiss was referred to Magistrate Judge Renee Harris Tolliver for a recommendation.  Judge Tolliver issued Findings, Conclusions, and Recommendation of the United States Magistrate Judge on May 25, 2012 (the "Recommendation").

## II.      PLAINTIFF'S OBJECTIONS TO THE RECOMMENDATION

10.     In the Recommendation, the Magistrate Judge applied the "specific and unequivocal" test to determine whether the Liquidation Trustee has standing to bring his claims against the Defendants.  The Court then found that the Liquidation Trustee had standing to bring Counts I (fraudulent transfer) and III (breach of contract), but lacked standing to bring Counts II (securities fraud) and IV (breach of the implied covenant of good faith and fair dealing).

11.     Plaintiff objects to the Recommendation because (1) it applied the "specific and unequivocal" test to determine whether the Liquidation Trustee has standing to bring the claims in the Complaint (Recommendation at 6-9); and (2) it found that the Plan did not "specifically and unequivocally" reserve claims for securities fraud and for breach of the implied covenant of good faith and fair dealing.

**A.      The Recommendation Wrongly Applies The Specific And Unequivocal Test To Determine The Standing Of A Liquidation Trustee To Bring Claims.**

12.      Section 1123 of the Bankruptcy Code allows a plan of reorganization to transfer to a trustee of a liquidating trust the authority to enforce an estate's claims and to distribute the proceeds of successful suits to the estate's creditors.  *Torch Liquidating Trust v. Stockstill*, 561 F.3d 377, 387 (5th Cir. 2009).

13.      The goal of Section 1123(b)(3) is to preserve an estate's  causes of action for the benefit of creditors.  *Elk Horn Coal Co. v. Conveyor Manufacturing & Supply, Inc. (In re Pen Holdings, Inc.)*, 316 B.R. 495, 500 (Bankr. M.D. Tenn. 2004).  From its earliest beginnings, the aim of this provision "was to make possible the formulation and consummation of a plan before completion of the investigation and prosecution of causes of action . . . .  Thus the statute was in furtherance of the purpose of **preserving all assets of the estate while facilitating confirmation of plan**."  *Id.* (emphasis added) (citations omitted).

14.      The case law analyzing standing to bring claims pursuant to Section 1123(b)(3) reflects the statute's purpose of preserving assets of the estate for the benefit of creditors.  Where a reorganized <u>debtor</u> seeks to bring a post-confirmation claim, courts protect creditors by ensuring (1) that the debtor did not conceal claims from its creditors during bankruptcy so that it could seek recovery for itself by filing such claims post-confirmation; and (2) that the debtor did not conceal a claim it had against a creditor in order to win that creditor's vote in favor of a plan only to later sue the creditor.  *See, Blue Water Endeavors, LLC v. AC & Sons, Inc. (In re Blue Water Endeavors, LLC), Adv. No. 10-1015, 2011 WL 52525 at * 4 (Bankr. E.D. Tex. Jan. 6, 2011).  See also, Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Operating LLC),* 540 F.3d 351 (5th Cir. 2008); *Harstad v. First American Bank (In re Harstad),* 39 F.3d 898 (8th Cir. 1994).  To protect creditors, courts analyzing the standing of <u>debtors</u> to bring post-petition claims

4

require that the claims be specifically and unequivocally reserved in a reorganization plan and/or

disclosure statement.  *See Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Operating*

*LLC),* 540 F.3d 351, 355 (5th Cir. 2008).

15.     On the other hand, liquidation trustees generally seek to bring post-confirmation

claims on behalf of, and for the benefit of, creditors.  In that context, there is no danger that a

liquidation trustee is concealing claims to the detriment of the creditors.  Accordingly, courts

examining the standing of a liquidation trustee focus on the structure of a liquidation plan to

ensure that the trustee is pursuing claims on behalf of the creditors.  *See McFarland v. Leyh (In*

*re Texas General Petroleum Corp.)*, 52 F.3d 1330, 1335 (5th Cir. 1995); *Torch Liquidating*

*Trust*, 561 F.3d at 387.

16.     Because Plaintiff is a Liquidation Trustee, not a debtor, the Court should apply

the two part test of *In re Texas General Petroleum Corp.*, 52 F.3d 1330, 1335-36 (5th Cir. 1995)

and *Torch Liquidating Trust*, 561 F.3d at 386.  That test requires that a plaintiff demonstrate: (1)

that he has been appointed; and (2) that he is a representative of the estate to establish standing to

bring all claims in the complaint.  *See id.*

17.     The Recommendation incorrectly rejects the test applied in *Texas General*

*Petroleum* and *Torch Liquidating Trust*, which both addressed the standing of a liquidation

trustee to bring claims.  Instead, the Recommendation applies the  "specific and unequivocal

test" applied to debtors attempting to bring post-petition claims.

18.     The Recommendation distinguished *Texas General Petroleum* on the ground that

it interpreted an ambiguous plan of reorganization which reserved preference claims for the

debtor or for a trustee.  However, before interpreting the plan, the court in *Texas General*

*Petroleum* first applied the two-step standing test to determine whether the trustee had been

5

appointed and whether the trustee was a representative of the estate.  *See Texas General Petroleum*, 52 F.3d at 1335.  The court did not apply the specific and unequivocal test to determine whether the liquidation trustee had standing.  To the contrary, the court found that the trustee had standing even where the plan was ambiguous as to whether a claim had been reserved.  *Id.* at 1335-36.  The Recommendation errs by distinguishing this case.

19.     The Recommendation indicates that "[i]n *Texas Wyoming Drilling*, the court applied the specific and unequivocal standard even though the bankruptcy trustee had succeeded the debtor as the plaintiff in that action."  (Recommendation at 7).

20.     *Texas Wyoming Drilling*, however, does not support the Recommendation.  In that case, the lower court actually found that trustee had standing to bring certain claims even where the plan of reorganization did not specifically and unequivocally retain the claims.  The lower court held "[t]he Trustee may, therefore, enforce the TWD Claims on behalf of the estate for the benefit of the unsecured creditors **even if the language in the TWD Plan is insufficient to meet the specific and unequivocal requirement of United Operating**."  *In re Texas Wyoming Drilling*, 422 B.R. 612, 634 (N.D. Tex. Bankr. 2010) (emphasis added).

21.     In affirming the lower court's order, the Fifth Circuit in *Texas Wyoming Drilling* did not, as Defendants claim, hold that the specific and unequivocal test applies to trustees as well as debtors.  Instead, the court applied the specific and equivocal test to determine that "the reorganized debtor specifically and unequivocally retained the[] claims" and expressly declined to apply that test to the trustee, explaining, "Because we hold that the plan and disclosure statement sufficiently preserved the Avoidance Actions, we need not address the Shareholder's appeal of the bankruptcy court's alternative finding that the conversion of the TWD's Chapter 11 bankruptcy into a Chapter 7 bankruptcy conferred standing upon the newly-appointed trustee of

the estate." *Texas Wyoming Drilling*, 647 F.3d 547, 552 n.3 (5th Cir. 2011).   Thus, *Texas Wyoming Drilling* does not, as Defendants contended, stand for the proposition that the specific and unequivocal test applies to liquidation trustees bringing post-petition claims.

22.     Moreover, application of the specific and unequivocal test to post-petition claims brought by liquidation trustees contradicts the policies of the bankruptcy laws and would drastically change practice in bankruptcy courts.   The bankruptcy laws are designed to protect creditors, and courts seek the early and efficient resolution of bankruptcy cases.   *Elk Horn Coal Co. v. Conveyor Manufacturing & Supply, Inc. (In re Pen Holdings, Inc.)*, 316 B.R. 495, 499-500 (Bankr. M.D. Tenn. 2004) (explaining that the purposes of Section 1123(b)(3) are to (1) preserve the assets of the estate and (2) permit confirmation of reorganization plans "**before completion of the investigation and prosecution of causes of action**.") (emphasis added). Requiring liquidation trustees, as opposed to debtors, to satisfy the specific and unequivocal test detracts from both of those objectives by preventing approval of reorganization plans until investigations have been completed and all claims have been specifically and unequivocally identified.

23.     And factually, KBW is not a creditor in need of protection in this circumstance. KBW did not file a proof of claim in the GFG bankruptcy case.   Plaintiff's Appendix in opposition to the motion to dismiss [Docket No. 36] ("Pl. App.") at 1, ¶ 2; Pl. App. at 3-51, Ex. 1.  KBW was, therefore, not entitled to notice of the Plan, Liquidation Trust Agreement, or the Disclosure Statement, and was not entitled to, and did not, vote to approve or reject the Plan. Pl. App. at 1-2, ¶ 3; Pl. App. at 52-64, Ex. 2.

DM1\3363524.1

**B.      The Recommendation Wrongly Concludes That the Plan Did Not Sufficiently
Reserve His Claims For Securities Fraud And For Breach Of The Implied
Covenant Of Good Faith And Fair Dealing.**

24.      After finding that the "specific and unequivocal" test applies to determine
whether the Liquidation Trustee has standing, the Recommendation then erred by finding that,
with respect to Counts II and IV, the Plan failed to meet that test.

25.      The Recommendation correctly found that to meet the "specific and unequivocal
test" a reorganization plan or disclosure statement must only identify categories of claims.
(Recommendation at 13).

26.      The Recommendation found that the Liquidation Trustee has no standing to bring
Count II for securities fraud because that claim was not sufficiently reserved in the Plan and
Disclosure Statement.  (Recommendation at 15-16).  However, the Plan reserved all "Rights of
Action" including causes of action "for breaches of duties imposed by law," and "fraud" claims.
Complaint, ¶ 14; Defendants' Appendix in support of the motion to dismiss, attached to the
Declaration of Thomas J. Kavaler [Docket No. 27] ("Def. App."), Ex. 1A, Plan, Exhibit A,
Glossary, ¶ 126, at 56-57.  That language was sufficient to reserve the Liquidation Trustee's
securities fraud claim even under the specific and unequivocal test.

27.      The Recommendation further found that Count IV for breach of the implied
covenant of good faith and fair dealing was not specifically reserved by the Plan and Disclosure
Statement.  (Recommendation at 15-16).

28.      Under both New York law, which was chosen by the parties to govern their
agreements, and Texas law, where GFG was located, the implied covenant of good faith and fair
dealing is a duty imposed by law.

29.      Because the Plan specifically reserved causes of action "in contract" and claims
on contracts or "for breaches of duties imposed by law," the Recommendation erred by finding

8

that Count IV was not reserved for the Liquidation Trustee.  Complaint, ¶ 14; Def. App., Ex. 1A,

Plan, Exhibit A, Glossary, ¶ 126, at 56-57.

## III.    CONCLUSION

For the reasons stated herein, Plaintiff requests that Defendants' motion to dismiss be

denied in its entirety.


Dated:  June 11, 2012                              Respectfully submitted,


                                                   */s/ Hersh Kozlov*_____

E. Lee Morris                                      Hersh Kozlov (admitted *pro hac vice*)
   TX Bar No. 00788079                             Patrick Matusky (admitted *pro hac vice*)
**MUNSCH HARDT KOPF & HARR, P.C.**                 Vincent J. Nolan III (admitted *pro hac vice*)
500 N. Akard Street, Suite 3800                    **DUANE MORRIS LLP**
Dallas, TX 75201-6659                              1940 Route 70 East, Suite 200
Telephone: 214.855.7500                            Cherry Hill, NJ 08003
Facsimile: 214.855.7584                            856.874.4200 - Telephone
lmorris@munsch.com                                 856.424.4446 – Facsimile
                                                   hkozlov@duanemorris.com
                                                   pmatusky@duanemorris.com
                                                   vnolan@duanemorris.com

                                                   Wayne Mack (admitted *pro hac vice*)
                                                   James Steigerwald (admitted *pro hac vice*)
                                                   **DUANE MORRIS LLP**
                                                   30 South 17th Street
                                                   Philadelphia, PA 19103-4196
                                                   215.979.1000 - Telephone
                                                   215.979.1020 – Facsimile
                                                   wamack@duanemorris.com
                                                   jhsteigerwald@duanemorris.com

                                                   ***Counsel For Kenneth L. Tepper, In His***
                                                   ***Capacity As The Liquidation Trustee For***
                                                   ***The GFGI Liquidation Trust***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on June 11, 2012, in accordance with Fed. R. Civ. P. 5(b)(2)(E) and (b)(3) and Local Rule 5.1(d), a true and correct copy of the foregoing pleading was served on the Defendants through their below counsel by electronic transmission through the Court's electronic case filing (ECF) system:

Thomas J. Kavaler
Catherin Suvari
Cahill Gordon & Reindel LLP
Eighty Pine Street
New York, NY 10005-1702
Email: tkavaler@cahill.com
Email: ksuvari@cahill.com

Peter C. D'Apice
Stutzman, Bromberg, Esserman & Plifka
A Professional Corporation
2323 Bryan Street, Suite 2200
Dallas, TX 75201-2689
Email: d'apice@sbep-law.com

*/s/ E. Lee Morris*
E. Lee Morris

10