IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **KENNETH TEPPER, in his** | § | |
| **capacity as the Liquidation Trustee** | § | |
| **for the GFGI Liquidation Trust,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:11-CV-2087-L-BK** |
| | § | |
| **KEEFE BRUYETTE & WOODS, INC.,** | § | |
| **and KBW, INC**., | § | |
| | § | |
| Defendants. | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the court is Defendants' Motion to Dismiss Plaintiff's Complaint, filed on November 28, 2011, by Defendants Keefe Bruyette & Woods, Inc. and KBW, Inc.  The court referred the motion to United States Magistrate Judge Renee Harris Toliver on April 20, 2012, for findings and recommendations. The magistrate judge issued her Findings, Conclusions, and Recommendation ("Report") on May 25, 2012, recommending that Defendants' motion to dismiss, based on Plaintiff's lack of standing, be granted in part and denied in part.  Both parties filed objections to the Report. Having reviewed the pleadings, objections, record, applicable law, and the findings and conclusions of the magistrate judge, the court determines that the findings and conclusions are **correct** with respect to Plaintiff's standing to pursue a fraudulent transfer claim under the Bankruptcy Code and contract claim and Plaintiff's lack of standing to pursue a claim for breach of the duty of good faith and fair dealing.  The court **rejects** the magistrate judge's finding and conclusion that Plaintiff has standing to pursue his fraudulent transfer claims under New York and Texas law but does not have

standing to pursue his alleged securities fraud claims under 15 U.S.C. §§ 78i, 78j, and 78t-1, and 17 C.F.R. § 240.10b-5.

I.    **Background**

Plaintiff Kenneth Tepper ("Plaintiff" or "Tepper") brought this action on August 22, 2011, in his capacity as the Liquidation Trustee for the Guaranty Financial Group, Inc. ("GFGI") Liquidation Trust, against Defendants Keefe Bruyette & Woods, Inc. ("KBW") and KBW, Inc. (collectively, "Defendants"). Plaintiff asserts the following claims against Defendants: (1) fraudulent transfer under 11 U.S.C. §§ 544, 548, and 550, Texas Business Commerce Code § 24.001 *et seq*., and New York Debtor and Creditor Law 271, *et seq*. (Count I); (2) violations of United States Securities Laws 11 U.S.C. § 541; sections 9, 10(b), and 20A of the Securities Exchange Act of 1934; 15 U.S.C. §§ 78i, 78j, and 78t-1; and Rule 10b-5 and C.F.R. § 240.10b-5 based on, among other things, KBW's alleged fraudulent short selling of Guaranty Financial Group, Inc. ("GFG") stock (Count II); (3) breach of contract under 11 U.S.C. § 541 and applicable state law (Count III); and (4) breach of the duty of good faith and fair dealing under 11 U.S.C. § 541 and applicable state law (Count IV).

This action and Plaintiff's claims arise out of the chapter 11 bankruptcy proceeding, Case No. 09-35582-bjh, filed by GFG and certain of its affiliates (collectively, Debtors") on August 27, 2009, in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division. Debtors filed their Amended Disclosure Statement ("Disclosure Statement") and Second Amended Joint Plan of Liquidation for Guaranty Financial Group, Inc., *et al* (the "Plan") on May 6, 2011. It is undisputed that these documents, together with the Liquidation Trust Agreement, provided for the establishment of the GFGI Liquidation Trust, the appointment of Tepper as Liquidation Trustee, and

**Memorandum Opinion and Order - Page 2**

the transfer of all of GFG's assets to the GFGI Liquidation Trust and the FDIC.  On May 11, 2011, the Plan was confirmed by the bankruptcy court.

Prior to filing bankruptcy, GFG engaged Defendants as a financial or investment advisor in January 2008, and entered into a Non-Disclosure Agreement and General Advisory Services Agreement pursuant to which Defendants provided financial advice and investment banking services to GFG.  Plaintiff contends that at the same time KBW was advising GFG and purporting to help it raise capital, KBW was also betting against GFG in the public marketplace and using confidential information provided to it to "short" the stock of GFG and profit at GFG's expense.  Plaintiff maintains that KBW's shortselling of GFG's stock undermined GFG's efforts to raise capital by sending a negative message to the market from GFG's own investment banker and negatively impacted the price of GFG's stock.  Although some capital was raised by KBW, Plaintiff argues that the $20 million in compensation paid by GFG was grossly disproportionate to KBW's efforts. Plaintiff further asserts that at the time the $20 million was transferred to KBW in 2008, GFG was insolvent or became insolvent as a result of the transfers.  Plaintiff, through this action, seeks to recover the $20 million that GFG paid to KBW.

On November 28, 2011, Defendants moved, pursuant to Rule 12(b)(1), to dismiss all of Plaintiff's claims for lack of standing.  At issue in Defendants' motion and the parties' objections to the magistrate judge's Report is whether the claims asserted by Plaintiff were sufficiently reserved under the Plan and Disclosure Statement to satisfy 11 U.S.C. § 1123(b)(3).

## II.    Applicable Standard

Federal Rule of Civil Procedure 72 sets forth the standard of review for magistrate findings and recommendations. Fed. R. Civ. P. 72.  When a magistrate judge's findings and recommendations

pertain to a dispositive motion, the court must conduct a de novo review of "any part of the magistrate judge's disposition that has been properly objected to," and it "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).

## III.    Analysis

The magistrate judge recommended that Defendants' motion to dismiss be granted with regard to Plaintiff's claims for securities fraud (Count II) and breach of the duty of good faith and fair dealing (Count IV) and denied with regard to Plaintiff's claims for fraudulent transfer (Count I) and contract (Count III).

### A.    Defendants' Objections - Fraudulent Transfer and Contract Claims

Defendants contend that the magistrate judge erred in concluding that Plaintiff has standing to pursue his fraudulent transfer and contract claims.  As to both claims, Defendants assert that the Fifth Circuit has never held that the mere reference to an action and applicable statute is sufficient to retain claims under 11 U.S.C. § 1123(b)(3).  Rather, according to Defendants, the cases in which the Fifth Circuit has found a debtor's plan or disclosure statement language sufficient to constitute an effective reservation of claims, the reservation language has identified something more than just the claim and statutory provision.  Defendants contend, based on *In re Texas Wyoming Drilling, Incorporated*, 647 F.3d 547 (5th Cir. 2011); *In re MPF Holding U.S. LLC*, 443 B.R. 736 (Bankr. S.D. Tex. 2011); *In re Bigler LP*, Nos. 09-38188, 09-38189, 09-38190, 09-38192, 09-38194, 2010 WL 6972610 (Trial Order) (Bankr. S.D. Tex. Nov. 09, 2010); and other cases; that the "something more" under the Fifth Circuit's "specific and unequivocal" standard includes identification of prospective defendants, the possible amount of recovery, and the basis for the claim.  Defendants

therefore argue that the mere reference to and reservation in the Plan and Disclosure Statement of "claims on contract" and "all Avoidance Actions," without more, is not sufficiently specific under Fifth Circuit precedent to preserve these claims.  Defendants contend that, even more compelling, is the Disclosure Statement's identification of specific prospective defendants and the recovery amounts of potentially avoidable transfers that did not include any reference to Defendants or the $20 million contract action asserted by Plaintiff in this action.  Finally, Defendants contend that, even assuming that the identification of a claim and statute is sufficient to reserve a claim, the Plan and Disclosure Statement makes no reference to the New York or Texas statutes under which Plaintiff's fraudulent transfer claim is brought.

Plaintiff counters that the heightened standard advocated by Defendants is not consistent with Fifth Circuit precedent, which requires only a categorical reservation of claims.  While the court in *In re Texas Wyoming Drilling* concluded that the reservation of certain claims in the plan at issue was sufficiently specific because the plan named the categories of actions to be pursued, the possible amount of recovery, and the basis for the claims, Plaintiff contends that the court did not hold that such specificity was required to meet the specific and unequivocal standard enunciated in *In re United Operating, LLC*, 540 F.3d 351 (5th Cir. 2008), and declined to address the issue of whether prospective defendants must be specifically identified.  With the exception of *In re MPF Holding U.S. LLC*, Plaintiff contends that none of the district court cases cited by Defendants has required more than a categorical reservation of claims.  Plaintiff further contends that Defendants' argument and citation to cases addressing blanket reservations such as "all causes of action" or "any and all claims" are not relevant to this case because the Plan and Disclosure Statement refer to specific categories of claims such as "preference claims," "Avoidance Actions," and "claims on contracts."

**Memorandum Opinion and Order - Page 5**

Pl.'s Resp. 6. Plaintiff therefore contends that the reservation of "claims on contract" and "Avoidance Actions," the latter of which are defined as including "causes of action under §§ 506, 510, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code," is sufficiently specific to preserve such claims.  Pl.'s Resp. 6.

> Section 1123(b)(3) states:
>
> Subject to subsection (a) of this section, a plan may . . . provide for
>
> (A) the settlement or adjustment of any claim or interest belonging to the debtor or to the estate; or
>
> (B) the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest.

11 U.S.C. § 1123(b)(3)(A), (B).  The Fifth Circuit's specific and unequivocal standard applicable to the reservation of claims was announced in *In re United Operating, LLC*, in which the court explained:

> [I]n some cases the Code allows a reorganized debtor to bring a post-confirmation action on a "claim or interest belonging to the debtor or to the estate." 11 U.S.C. § 1123(b)(3). A debtor may preserve its standing to bring such a claim (e.g., for fraud or breach of fiduciary duty, or to avoid a preferential transfer) but only if the plan of reorganization expressly provides for the claim's "retention and enforcement by the debtor." § 1123(b)(3)(B). "After confirmation of a plan, the ability of the [debtor] to enforce a claim once held by the estate is limited to that which has been retained in the plan." *In re Paramount Plastics, Inc.*, 172 B.R. 331, 333 (Bankr. W.D. Wash. 1994); *see also In re Tex. Gen. Petrol. Corp.*, 52 F.3d 1330, 1335 n.4 (5th Cir. 1995).

*In re United Operating, LLC*, 540 F.3d at 355 (footnotes omitted). The court went on to state that for a debtor to preserve a claim, "the plan must expressly retain the right to pursue such actions." *Id.* (quotation omitted).  To expressly retain the right to pursue an action, "[t]he reservation must be 'specific and unequivocal.'" *Id.* (quoting *Harstad v. First American Bank*, 39 F.3d 898, 902 (8th Cir. 1994), and citing *In re Ice Cream Liquidation, Inc.*, 319 B.R. 324, 337-38 (Bankr. D. Conn. 2005)).

Defendants correctly note that the plan and disclosure statement in *In re Texas Wyoming Drilling* not only set forth the existence of the Avoidance Actions but also included "the possible amount of recovery to which they would lead, [and] the basis for the actions." *In re Texas Wyoming Drilling*, 647 F.3d at 552.  The court in *In re Texas Wyoming Drilling*, however, expressly declined to "decide whether [under *In re United Operating*'s specific and unequivocal standard] a debtor whose plan fails to identify any prospective defendants has standing to pursue post-conformation claims against subsequently-named defendants." *Id.*  The court did not need to address this issue because it determined that the disclosure statement identified prospective defendants as "'[v]arious pre-petition shareholders of the Debtor' who might be sued for 'fraudulent transfer and recovery of dividends paid to shareholders.'" *Id.* Further, while the court held that the plan and disclosure statement at issue were sufficiently specific under *In re United Operating* because they reserved the debtor's right to pursue Avoidance Actions against pre-petition shareholders, it did not hold, as Defendants contend, that *In re United Operating*'s specific and unequivocal standard requires something more than the retention of claims.

Rather, the court observed that "*In re United Operating* focused exclusively on the retention of *claims*. It never held that intended defendants must be named in the plan." *Id.* (emphasis in original).  The court went on to note that in *In re United Operating*, it had cited with approval *In re Ice Cream Liquidation*, for the proposition that "the plan's categorical reservation of 'preference' claims was sufficiently specific; plan need not itemize individual transfers that may be pursued as preferential." *Id.*  According to the court, *"In re Ice Cream Liquidation* held that while creditors must be told in the plan that avoidance actions will be pursued post-confirmation, individual prospective defendants did not have to be identified." *Id.*  The court therefore concluded that "*In re*

*United Operating's* citation to *In re Ice Cream Liquidation's* holding supports the trustee's argument that a plan need not identify the prospective defendants." *Id.*

The Plan lists "Avoidance Actions as assets of the trustee following the confirmation of the bankruptcy plan, and the term "Avoidance Actions" is defined as "any causes of action arising under §§ 506, 510, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code." Report 14; Defs.' App. 42, 50.  The Plan also reserves "Rights of Action," which are defined to include claims "in contract" and "claims on contract."  Report 15; Defs.' App. 41, 58, 69. Based on the holdings in *In re Texas Wyoming Drilling* and *In re United Operating*, the court determines that the Plan's categorical reference to and reservation of contract claims and avoidance actions is sufficiently specific to reserve Plaintiff's contract claim, as well as Plaintiff's fraudulent transfer claims under sections 544, 548, and 550 of the Bankruptcy Code.

Further, while a summary of transfers to creditors within the 90-day period before the bankruptcy Petition date and to insider creditors within the one-year period before the Petition date is included in Exhibit 3 to the Disclosure Statement, neither the Disclosure Statement nor the Plan limit avoidance litigation to claims against these entities.  *See* Defs.' App. 122.  The court therefore disagrees with Defendants' contention that the failure to include Defendants or the $20 million transfer undermines Plaintiff's standing to pursue an avoidance action against them.   More importantly, as already noted, neither *In re Texas Wyoming Drilling* nor *In re United Operating* requires that a specific prospective defendant, potential amount of recovery, or the claim basis be included in a plan or disclosure statement to satisfy the specific and unequivocal standard for

reserving claims.  To the extent that the district court cases cited by Defendants held to the contrary, the court declines to follow them.[1]

The court, however, agrees with Defendants that Plaintiff's pursuit of a fraudulent transfer claim under Texas and New York statutory law is not supported by the Plan, which only provides for avoidance claims under the aforementioned sections of the Bankruptcy Code.   The court concludes that Plaintiff has standing to pursue his contract claim and fraudulent transfer claim under sections 544, 548, and 550 of the Bankruptcy Code but does not have standing to pursue a fraudulent transfer claim under Texas and New York statutory law.   Accordingly, Defendants' objections are **sustained in part and overruled in part** consistent with this ruling.  Plaintiff's fraudulent transfer claim under Texas and New York statutory law will therefore be dismissed.

### B.     Plaintiff's Objections - Securities Fraud and Duty of Good Faith Claims

Plaintiff contends that the magistrate judge erred in determining that the reservation of claims in the Plan and Disclosure Statement is not sufficiently specific to preserve his claims for securities fraud and breach of the duty of good faith and fair dealing.  Plaintiff notes that  the Plan reserved all "Rights of Action," which is defined to include "fraud" claims and claims "for breaches of duties imposed by law."  Defs.' App. 58.  Plaintiff further asserts, without reference to authority, that under New York law, which governs the parties' agreements, and Texas law, where GFG is located, the implied covenant of good faith and fair dealing is a duty imposed by law.   In addition, Plaintiff argues, based on *In re Texas General Petroleum Corporation*, 52 F.3d 1330 (5th Cir. 1995), and *In re Torch Liquidating Trust*, 561 F.3d 377, 387 (5th Cir. 2009), the latter of which was decided after

---

[1] *In re MPF Holding U.S. LLC* is on appeal, and it and *In re Bigler LP* were decided before *In re Texas Wyoming Drilling*.  As a result, the courts in these cases did not have the benefit of the Fifth Circuit's reasoning and holding in *In re Texas Wyoming Drilling*.

*In re United Operating*, that the specific and unequivocal standard applicable to debtors does not apply to liquidation trustees.  According to Plaintiff, to have standing as a liquidation trustee, he need only show that he was appointed and that he is a representative of the estate.

In response, Defendants contend that section 1123(b)(3)(B) of the Bankruptcy Code requires Plaintiff to satisfy the representative requirement in addition to *In re United Operating's* specific and unequivocal standard for reserving claims.  Defendants argue that the court's analysis in *In re Texas General Petroleum Corporation* is inapplicable to this case because it dealt with the issue of whether the trustee had authority to enforce any claims of the estate, not whether specific claims were sufficiently reserved under the plan.  Defendants further assert that nothing in *In re Torch Liquidating Trust* implies that a trustee's appointed status as the estate representative suffices, without more, to permit the assertion on the estate's behalf of any claim not properly reserved.

The court agrees that section 1123(b)(3)(B) requires Plaintiff to satisfy the representative requirement and *In re United Operating's* specific and unequivocal standard for reserving claims because section 1123(b)(3)(B) applies equally to "the retention and enforcement by the debtor, *by the trustee*, or by a representative of the estate appointed for such purpose, of any such claim or interest." 11. U.S.C. § 1123(b)(3)(B).  Moreover, as correctly noted by Defendants, at issue in *In re Texas General Petroleum Corporation* and *In re Torch Liquidating Trust* was whether the trustee had authority to enforce *any* claims of the estate, not whether specific claims were sufficiently reserved under the plan.  As a result, they are not relevant to the court's analysis as to whether Plaintiff's claims for securities fraud violations and the breach of the duty of good faith and fair dealing were sufficiently reserved under the Plan.

**Memorandum Opinion and Order - Page 10**

The magistrate judge concluded that the Plan's reservation of "claims in tort" was not sufficiently specific to reserve a federal securities fraud action, Report 15-16; however, because the Plan did reserve "such claims and defenses as fraud," the court concludes that Plaintiff has standing to pursue his claim for alleged securities fraud violations.  On the other hand, the court disagrees with Plaintiff that the Plan's general reference to tort claims or claims based on "breaches of duties imposed by law" is sufficiently specific to reserve a claim for the breach of the duty of good faith and fair dealing.  While *In re United Operating* held that the "the plan's categorical reservation of 'preference' claims was sufficiently specific" to satisfy the specific and unequivocal test, the court determines that "claims . . .  for breaches of duties imposed by law" necessarily includes a wide variety of different types of tort claims and thus is not sufficiently specific to preserve a claim for breach of the duty of good faith and fair dealing.  *See In re United Operating, LLC*, 540 F.3d at 355. The court therefore concludes that Plaintiff has standing to pursue his securities fraud violations claim but not his claim for breach of the duty of good faith and fair dealing.  Accordingly, Plaintiff's objections are **sustained in part and overruled in part** consistent with this ruling, and Plaintiff's claim for breach of the duty of good faith and fair dealing will be dismissed.

## IV.    Conclusion

For the reasons explained, the court determines that the findings and conclusions are correct with respect to Plaintiff's standing to pursue a fraudulent transfer claim under the Bankruptcy Code and contract claim and Plaintiff's lack of standing to pursue a claim for breach of the duty of good faith and fair dealing, and they are **accepted** as those of the court. The court **rejects** the magistrate judge's findings and conclusions that Plaintiff has standing to pursue a fraudulent transfer claim under New York and Texas law but does not have standing to pursue his alleged securities fraud

claims under 15 U.S.C. §§ 78i, 78j, and 78t-1, and 17 C.F.R. § 240.10b-5.   Accordingly, the court

**grants** Defendants' Motion to Dismiss Plaintiff's with respect to Plaintiff's fraudulent transfer claim

under New York and Texas law and breach of the duty of good faith and fair dealing claim for lack

of standing and **dismisses them with prejudice.**[2]   Defendants' Motion to Dismiss is **denied** in all

other respects.

       **It is so ordered** this 19th day of September, 2012.

Sam A. Lindsay
United States District Judge

---

[2] Dismissal for lack of subject matter jurisdiction or standing is usually without prejudice, while dismissal for failure to state a claim is with prejudice. *Sepulvado v. Louisiana Bd. of Pardons and Parole*, 114 F. App'x 620, *2 (5th Cir. 2004). There are instances, however, where a dismissal for lack of standing is with prejudice. *See, e.g., Baton Rouge Building and Constr. Trades Council AFL CIO v. Jacobs Constructors, Inc.*, 804 F.2d 879, 881 (5th Cir. 1986) (affirming district court's dismissal with prejudice based on lack of standing); *Westfall v. Miller*, 77 F.3d 868 (5th Cir. 1996) (same). Dismissal with prejudice is proper under the facts of this case because as previously noted, the claims at issue were not sufficiently reserved under the Plan and Disclosure Statement, and Plaintiff is therefore precluded from asserting the claims in a post-confirmation action.

**Memorandum Opinion and Order - Page 12**