# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| KENNETH L. TEPPER, IN HIS CAPACITY AS THE LIQUIDATION TRUSTEE FOR THE GFGI LIQUIDATION TRUST, <br><br> Plaintiff, <br><br> v. <br><br> KEEFE, BRUYETTE & WOODS, INC. and KBW, INC., <br><br> Defendants. | CIVIL CASE NO. 3:11-cv-2087-L <br><br> Hon. Renee H. Toliver, U.S.M.J. |

**PLAINTIFF'S SUPPLEMENTAL APPENDIX IN SUPPORT OF PLAINTIFF'S MOTION TO OVERRULE DEFENDANTS' OBJECTIONS AND COMPEL DOCUMENTS IN RESPONSE TO PLAINTIFF'S FIRST SET OF REQUESTS**

| | |
|---|---|
| E. Lee Morris <br>    TX Bar No. 00788079 <br> **Munsch Hardt Kopf & Harr, P.C.** <br> 500 N. Akard Street, Suite 3800 <br> Dallas, TX 75201-6659 <br> Telephone: 214.855.7500 <br> Facsimile: 214.855.7584 <br> lmorris@munsch.com | Hersh Kozlov (admitted pro hac vice) <br> Patrick Matusky (admitted pro hac vice) <br> Vincent J. Nolan III (admitted pro hac vice) <br> **Duane Morris LLP** <br> 1940 Route 70 East, Suite 200 <br> Cherry Hill, NJ 08003 <br> 856.874.4200 - Telephone <br> 856.424.4446 – Facsimile <br> hkozlov@duanemorris.com <br> pmatusky@duanemorris.com <br> vnolan@duanemorris.com <br><br> Wayne Mack (admitted pro hac vice) <br> James Steigerwald (admitted pro hac vice) <br> **Duane Morris LLP** <br> 30 South 17th Street <br> Philadelphia, PA 19103-4196 <br> 215.979.1000 - Telephone <br> 215.979.1020 – Facsimile <br> wamack@duanemorris.com <br> jhsteigerwald@duanemorris.com <br><br> ***Counsel For Kenneth L. Tepper, In His Capacity As The Liquidation Trustee For The GFGI Liquidation Trust*** |

# SUPPLEMENTAL APPENDIX
# TABLE OF CONTENTS

**Document**                                                                     **Page**

Declaration of Charles M. Hart ................................................................................................ iii

Emails of 07-25-2008 KBW re: Earnings Call Yesterday ................................ A-0001 to A-0002

Brief Summary of KBW's Involvement with Guaranty Financial ..................... A-0003 to A-0005

Memo of 08-01-2008 from Erin O'Reilly to Rusty LaForge ............................................. A-0006

Letter dated June 27, 2011 from Hersh Kozlov to Mitchell Kleinman .............. A-0007 to A-0008

Letter dated July 14, 2011 from Mitchell Kleinman to Hersh Kozlov ................................ A-0009

Email 02-23-2012 to Thomas J. Kavaler Re Proposed Discovery
       Plan & Joint Status Report ........................................................................ A-0010 to A-0011

Email 2-28-2013 from Thomas Kavaler to Patrick Matusky ............................................. A-0012

                                                       Respectfully submitted,

Dated: March 29, 2013

| | |
|---|---|
| E. Lee Morris<br>   TX Bar No. 00788079<br>**MUNSCH HARDT KOPF & HARR, P.C.**<br>500 N. Akard Street, Suite 3800<br>Dallas, TX 75201-6659<br>Telephone: 214.855.7500<br>Facsimile: 214.855.7584<br>lmorris@munsch.com<br><br>***Counsel For Kenneth L. Tepper, In His Capacity As The Liquidation Trustee For The GFGI Liquidation Trust*** | *s/ Hersh Kozlov*<br>Hersh Kozlov (admitted pro hac vice)<br>Patrick Matusky (admitted pro hac vice)<br>Charles M. Hart (admitted pro hac vice)<br>Vincent J. Nolan III (admitted pro hac vice)<br>**Duane Morris LLP**<br>1940 Route 70 East, Suite 200<br>Cherry Hill, NJ 08003<br>856.874.4200 - Telephone<br>856.424.4446 – Facsimile<br>hkozlov@duanemorris.com<br>pmatusky@duanemorris.com<br>vnolan@duanemorris.com<br><br>Wayne Mack (admitted pro hac vice)<br>James Steigerwald (admitted pro hac vice) |

**Duane Morris LLP**
30 South 17th Street
Philadelphia, PA 19103-4196
215.979.1000 - Telephone
215.979.1020 – Facsimile
wamack@duanemorris.com
jhsteigerwald@duanemorris.com

*Counsel For Kenneth L. Tepper, In His Capacity As The Liquidation Trustee For The GFGI Liquidation Trust*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| KENNETH L. TEPPER, IN HIS CAPACITY AS THE LIQUIDATION TRUSTEE FOR THE GFGI LIQUIDATION TRUST,<br><br>Plaintiff,<br><br>v.<br><br>KEEFE, BRUYETTE & WOODS, INC. and KBW, INC.,<br><br>Defendants. | CIVIL CASE NO. 3:11-cv-2087-L<br><br>Hon. Sam A. Lindsay, U.S.D.J. |

### DECLARATION OF CHARLES M. HART

I, Charles M. Hart, declare as follows:

1. I am a member in good standing of the bars of New Jersey and Pennsylvania and am admitted *pro hac vice* in this matter. I am a partner in the law firm of Duane Morris LLP, which represents Plaintiff Kenneth L. Tepper, in his capacity as the Liquidation Trustee for the GFGI Liquidation Trust. I submit this declaration in support of Plaintiff's Motion to Overrule Defendants' Objections and Compel Documents in Response to Plaintiff's First Set of Requests.

2. The documents attached hereto as A-0001 through and including A-0012 are true and correct copies of the relevant portions of the documents listed in the Appendix Table of Contents above.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 29th day of March, 2013, in Cherry Hill, New Jersey.

                                                  /s/ Charles M. Hart
                                                  Charles M. Hart

**From:** Dubuque, Kenneth R. <Kenneth.Dubuque@guarantybank.com>
**Sent:** Friday, July 25, 2008 2:44 PM
**To:** Almy, Scott <Scott.Almy@guarantygroup.com>; Murff, Ron <Ron.Murff@guarantybank.com>; LaForge, Rusty <Rusty.LaForge@guarantygroup.com>
**Subject:** FW: Earnings Call Yesterday

---

**From:** Senchak, Andy [mailto:asenchak@kbw.com]
**Sent:** Friday, July 25, 2008 1:42 PM
**To:** Dubuque, Kenneth R.
**Subject:** RE: Earnings Call Yesterday

We will track this down.

---

This communication may contain privileged or confidential information, or may otherwise be protected by other legal rules. No confidentiality or privilege is waived or lost by any mistaken transmission. Access, copying or re-use of information by non-intended or non-authorized recipients is prohibited. If you are not an intended recipient of this communication, please notify the sender, delete it and do not read, act upon, print, disclose, copy, retain or redistribute any portion of this communication. Internet communications are not secure and therefore KBW, Inc. and its affiliates do not accept legal responsibility for the contents of this message. Although our systems operate anti-virus programs, we do not accept responsibility for any damage whatsoever that is caused by viruses being passed.

Unless otherwise specifically indicated, the content of this communication is for informational purposes only, and should not be regarded as an offer to sell or a solicitation of an offer to buy any securities, futures, options, loans, investment products or other financial product or service, an official confirmation of any transaction, or an official statement of KBW, Inc. or any of its affiliates. This communication is not intended for distribution to, or use by, any person or entity in any location where such distribution or use would be contrary to law or regulation, or which would subject any KBW Inc. or any affiliate to any registration requirement within such location. We do not accept email orders for securities or other investment products or services.

---

**From:** Dubuque, Kenneth R. [mailto:Kenneth.Dubuque@guarantybank.com]
**Sent:** Friday, July 25, 2008 2:05 PM
**To:** Senchak, Andy
**Subject:** FW: Earnings Call Yesterday

---

**From:** LaForge, Rusty
**Sent:** Friday, July 25, 2008 1:02 PM
**To:** Almy, Scott; Dubuque, Kenneth R.
**Cc:** Murff, Ron
**Subject:** RE: Earnings Call Yesterday

I just noticed this this morning:
Please be aware that the article by SNL Financial said that the comments in question were by KBW's Chairman and CEO, John Duffy. However, while John did mention us in his opening dialogue, it was actually KBW's CFO/CAO/EVP, Robert Giambrone, that made the more detailed comments regarding Guaranty that were mentioned in the SNL Financial article. He did so during the Q&A portion of their earnings call.

Thanks,
Rusty

DALLAS006301

A-0001

Rusty LaForge
SVP, Director of Investor Relations
Guaranty Financial Group Inc.
8333 Douglas Avenue | 16th Floor
Dallas | Texas | 75225
Tel 214.360.1967 | Fax 866.274.9702
To learn more, visit http://www.guarantygroup.com/

---

**From:** Almy, Scott
**Sent:** Friday, July 25, 2008 12:58 PM
**To:** Dubuque, Kenneth R.
**Cc:** Murff, Ron; LaForge, Rusty
**Subject:** FW: Earnings Call Yesterday

\*\*\* Privileged & Confidential \*\*\*
Attorney-Client and Attorney Work Product Privileges

FYI

---

**From:** Almy, Scott
**Sent:** Friday, July 25, 2008 12:57 PM
**To:** Murphy, Patricia
**Subject:** Earnings Call Yesterday

Just a note to let you know that comments made in reference to Guaranty by KBW during your earnings call Thursday were met with a fair amount of surprise and outrage here. Whether intentional or not, the comments cast our company in a very negative light. As evidence of this fact, we have already begun fielding calls this morning from third parties, each of which have expressed concern and surprise over the comments.

As you probably are aware, KBW is considered an "institutional affiliated party" of Guaranty under federal banking regulations. By operation of law, KBW owes our company, at a minimum, a special duty of care in connection with any and all consulting and advisory agreements. Our regulators, depositors and investors are keenly aware of public comments offered in respect to Guaranty and its subsidiaries. This is particularly true of public comments offered by our outside advisors. Please be guided accordingly.

I understand that Ken has already placed a call to Andy this morning.

Scott A. Almy | Guaranty Financial Group Inc.
EVP, General Counsel & Secretary
8333 Douglas Avenue | Dallas, Texas | 75225
214.360.1932 | Fax 214.360.1941 | Mobile 214.673.1909
scott.almy@guarantygroup.com

\*\*\*\*\*\*\*\*\*\*     Confidentiality Notice     \*\*\*\*\*\*\*\*\*\*
This electronic transmission and any attached documents or other writings
 are confidential and are for the sole use of the intended recipient(s)
identified above. This message may contain information that is privileged,
confidential or otherwise protected from disclosure under applicable law.
If the receiver of this information is not the intended recipient, or the
employee, or agent responsible for delivering the information to the
intended recipient, you are hereby notified that any use, reading,
dissemination, distribution, copying or storage of this information is
strictly prohibited. If you have received this information in error, please
notify the sender by return email and delete the electronic transmission,
including all attachments from your system.

DALLAS006302
A-0002

## Brief Summary of KBW's Involvement with Guaranty Financial

**January 15, 2008** — **Guaranty Financial Capital Infusion Pitch**
Examined the current state of the financial markets with examples of recent recapitalizations. Considered and ran analysis on the option of doing the following: rights offering, follow-on common equity offering, equity infusion, convertible preferred stock, convertible bonds, noncumulative perpetual preferred securities, enhanced trust preferred securities and trust preferred securities. Also ran analysis on the possibility of a sale of the company as well as the current Texas market environment. Introduced a list of potentially interested parties both private equity investors and potential buyers in a sale situation.

**February 07, 2008** — **Research Concerning Shareholder Cost Basis**
Modeled the approximate cost basis of influential shareholder to determine the positioning of shareholder and to further develop strategy for moving forward.

**February 11, 2008 (Week of)** — **KBW's Due Diligence of Guaranty Financial**
During the due diligence of Guaranty, KBW:
- reviewed the strategic plan
- used KBW's Fixed Income and Balance Sheet Restructuring Group's market knowledge to test valuation assumptions in examining the securities portfolio and related accounting issues
- talked to a "Big Four" accounting firm about the possibility of an impairment and reviewed the cash flows of the MBS portfolio
- conducted a preliminary review of loan portfolio and adequacy of loan loss reserve
- stress-tested loan loss reserves based on potential deterioration in classified loans
- used valuation scenarios to mark-to-market balance sheet and determined potential capital need given various scenarios
- analyzed strategic possibility of selling insurance building as well as the company headquarter building to obtain additional capital

**February 12, 2008** — **Peer Comparison**
Ran peer comparison for Guaranty to better analyze the institution in relative terms to peers in order to better understand positioning and market related concerns.

**February 25, 2008** — **Board Meeting**
Examined the scope of KBW's engagement with focus on the short-term needs of capital as well as the long-term positioning to execute a strategic plan considering balance sheet restructuring and identifying and pursuing M&A opportunities. KBW presented an overview of the current market environment, securities portfolio review, loan portfolio review, Guaranty's relative capital position and various balance sheet scenarios and capital raising options.

**February 26, 2008** — **Follow-up Presentation to the Board**
Analyzed and presented additional scenarios at the request of Chairman illustrating several other severities of a need for capital

**March 12, 2008** — **Pro Forma Capital Scenarios**
Updated and reanalyzed pro forma capital scenarios given various levels of market turbulence.

**March 14, 2008** — **Detailed Timeline**
Created a detailed timeline of events if a rights offering was the chosen method of raising capital.

**March 14, 2008** — **Rights Offering Overview**
Developed an overview of the attributes of a rights offering, the important role KBW plays and our long list of experience.

**March 16, 2008** — **Board Meeting**
Directed board on more pointed direction to give authority to management to begin process of raising equity primarily via rights offering. KBW ran a thorough analysis of the over economy since the previous board meeting as conditions had materially changed. After more fully explaining the misunderstanding they market had with Guaranty KBW gave a plan on how to properly correct the market's view. KBW gave a recommendation of moving forward with a rights offering while summarizing the benefits and illustrating several of the other options considered. Outlined various hurdles due to regulatory and exchange rules and provided insight on strategy in dealing with foreseen issues include, existing shareholders, tax ramifications and the long-term implications of raising common equity. We then performed extensive modeling on the financial impact of executing a capital raise.

**March 20, 2008** — **Ability to Pay Analysis for Potential Whole Bank Acquirors**
Identified potential interested parties of a whole bank sale transaction. Modeled the ability to pay for potential acquirors in order to gauge the potential multiples and buyer appetites of a entire comapny sale transaction as well as their price sensitivity.

| Date | Activity |
|---|---|
| March 24, 2008 | **Board Meeting**<br>Further clarified the rights offering process and gained approval to formally proceed with direction. Outlined the next several steps towards completion.<br><br>**Potential California Branch Sale**<br>Explored and analyzed the possibility of selling Guaranty's California branch franchise and examined historical comparable transactions |
| March 25, 2008 | **Organizational Meeting**<br>Held an "all hands" meeting to unify the various parties and discuss issues concerning: tax ramifications, other regulatory and legal issues impacting the offer, time and responsibility schedule, other issues impacting the structure and amount of the rights offering. |
| March 26, 2008 | **Pro Forma Capital Scenarios and Budget**<br>Updated and reanalyzed pro forma capital at a "must have" level and incorporated with the revised 2008 budget. |
| March 31, 2008 | **Rights Offering Overview**<br>Used modeling to illustrate various rights offering scenarios with alternative capital structures for comparison. Provided insight to various limitations such as the NYSE 20% rule.<br><br>**DCF and IRR**<br>Ran a DCF and IRR analysis to determine an approximate present value of Guaranty in both an aggregate and per share valuation. |
| March 31, 2008 (Week of) | **Virtual Data Room**<br>Continued to work with management to populate the virtual data room to be viewed by parties requesting formal due diligence with Guaranty. Demanding requests increased as parties gained access and began to review documents.<br><br>**S-1 Document**<br>Worked with legal parties to draft and review the S-1 document<br><br>**Potential Whole Company Buyers**<br>Tested the markets appetite in very general terms for a whole sale transaction contacting eight banks and four private equity groups resulting in weak responses implying low takeout multiples |
| April 03, 2008 | **Sales Memorandum**<br>Began preparing a sales memorandum document for a whole sale transaction. This document is used to educate potential buyers on the relevant issues regarding the company and provide explanation for common questions. |
| April 07, 2008 | **Board Meeting**<br>Updated the board on the prior weeks activities. (listed above) Further explained the advantages of a rights offering given the market conditions and situation. Worked with Fulbright & Jaworski to educate the board on the various tax issues created by the spin-off from Temple Inland. KBW formed and presented the proposed terms of the rights offering, illustrating the ability to withstand losses and the necessary backstops required to fully backstop the deal. Reviewed a list of potential backstops and an updated calendar. |
| April 17, 2008 | **Interested Parties Virtual Data Room Meetings**<br>Held conference call with interested party to further discuss the virtual data room and additional items needed to complete their analysis. |
| April 25, 2008 | **Internal Capital Committee Meeting**<br>Held an internal meeting of the Capital Commitment Committee concerning the rights offering. Prepared internal capital committee presentation concerning all relevant issues and an extensive overview of the structure. |
| April 27, 2008 | **Historical Stock Price Analysis**<br>Studied historical stock price charts of the company versus various major indices at several time periods to determined trading trends in attempts to better understand market activity. |
| April 28, 2008 (Week of) | **Onsite Due Diligence**<br>Organized and ran on-site due diligence processes for an interested party. Provided information, answered questions in order to best direct and maintain the process and coordinated and attended management meetings. |
| April 28, 2008 (Week of) | **Continued build-out of Virtual Data Room**<br>Fielded potential investor data requests and worked with management to obtain the files to satisfy the request. Then uploaded the files to the VDR and notified the potential investors. |
| April 29, 2008 | **Advised Management on First Quarter Earnings Release**<br>Worked with management to prepare for the first quarter earnings release, reviewed all documents and assisted in Q&A preparation. |

| | |
|---|---|
| May 01, 2008 | **Internal Sales Memorandum for Sales Force**<br>Combination of the investment banking team and the equity capital markets group worked together to create an internal sales memorandum to educate the sales force on the "story" of Guaranty Financial. Created solely with public information this document is designed to assist the sales team understand the offering and outstanding issues of the company. |
| May 05, 2008 | **Management Roadshow**<br>Organized and facilitated a management roadshow holding 13 one-on-one meetings with current investors as well as new potential backstops and hosted 12 companeis in a group lunch throughout a three day period. A roadshow presentation was created by KBW with the approval of Guaranty to help illustrate various talking points throughout the meetings. |
| May 06, 2008 | **TSFG Convertible Case Study**<br>Created an illustrative case study on TSFG's convertible issuance in order to educate and provide a recent example of this type of security. |
| May 08, 2008 | **Rights Offering Analysis**<br>Created an IRR analysis to determine potential returns to investors in various scenarios of the rights offering. |
| May 09, 2008 | **Icahn Meeting**<br>Held extensive conversations with Icahn Associates as a potential backstop. Presented proposed terms, a timeline and a potential return analysis. Provided pro forma company projection analysis as well as the implied valuation effect including the effect of OTTI on the MBS portoflio. Modeled the pro forma Icahn owership position subject to various rules and regulations. |
| May 13, 2008 | **External Sales Memorandum for Potential Backstops**<br>Created an external sales memorandum to educate potential backstops about the "story" of Guaranty Financial. Created solely with public information this document is designed to assist the potential backstops gain an understanding of the company in a relatively short time period and can be used as reference during management discussions. |
| May 12, 2008 &<br>May 19, 2008<br>(Weeks of) | **Intense Negotiation with Potential Backstops**<br>Held intense negotiation with potential backstops with multiple conversations each day. Involved the investment banking group, equity capital markets as well as the sales and trading team. |
| May 18, 2008 | **Board Meeting**<br>Updated the board on the status of the rights offering and provided detailed guidance of the steps for the next few days. Gained approval to go forward with the final stages of negotiations with the backstops and into the next phase of the transaction. |

**Constant Actions**

**Daily Update Conference Call**
Held daily "all hands" conference call to inform parties of the days activities, discuss outstanding issues and concerns and to protect the overall process of the transaction from being derailed.

**Financial Projection Model**
Created complex and all encompassing financial model in Excel which included ability to run various scenarios and strategic options. Included all before mentioned forms of capital raises as well as varous other strategic alternatives to boost capital levels and allowed for the manipulation of various scenarios of subscription, tax issues, etc. This model was updated at a minimum on a daily basis and often times several times per day running numerous scenarios.

**Reviewing and Drafting Legal Documents and Providing Insight**
There has been a constant process of reviewing and providing drafting input for various legal documents including: S-1, confidentiality agreements, term sheets and standby purchase aggreements.

**Conference Calls With Interested Parties**
Most days there are at least two or three, often times more, group calls with the interested parties. This requires a call before and after with the management of Guaranty to plan and review discussions.

A-0006


**Strategic Stock Surveillance, LLC**

**To:** Rusty LaForge
Senior Vice President, Director of Investor Relations
Guaranty Financial Group Inc.

**From:** Erin M. O'Reilly
Strategic Stock Surveillance, LLC

**Date:** August 1, 2008

---

On June 13, 2008 we learned that Keefe Bruyette & Woods had likely established a 180k share short position. These shares were likely sold short as of May 28 at an average price of $6.46 per share. It appears that these shares that were sold short were for KBW themselves and not for a client of KBW's. It is highly unusual for an investment banking firm to short shares of a client they are currently in the process of raising capital for and such action is typically considered a breach of material non-public information.

If you have any questions, please do not hesitate to contact us at 212-850-8155.

# DuaneMorris®

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
LOS ANGELES
CHICAGO
HOUSTON
HANOI
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
BALTIMORE
BOSTON
WASHINGTON, DC
LAS VEGAS
ATLANTA
MIAMI
PITTSBURGH
NEWARK
BOCA RATON
WILMINGTON
CHERRY HILL
PRINCETON
LAKE TAHOE
HO CHI MINH CITY

HERSH KOZLOV
DIRECT DIAL: +1 856 874 4201
PERSONAL FAX: +1 856 874 4361
E-MAIL: HKozlov@duanemorris.com

www.duanemorris.com

June 27, 2011

VIA FEDEX

Mitchell B. Kleinman
General Counsel and Corporate Secretary
KBW, Inc.
The Equitable Building
787 Seventh Avenue, 4th Floor
New York, NY 10019

Re: **Conflict of Interest -- Short Sale of Guaranty Financial Group Stock**

Dear Mr. Kleinman:

This firm represents the GFGI Liquidation Trust, the bankruptcy entity created to, among other things, investigate certain claims on behalf of Guaranty Financial Group, Inc. and its affiliates.

During 2008, Keefe Bruyette & Woods, Inc. was engaged by Guaranty Bank, Guaranty Financial Group, Inc. and their affiliates (collectively, "GFG") to represent GFG with respect to a number of undertakings, including raising capital for GFG after its spin-off from Temple-Inland, Inc. The services to be rendered by KBW on behalf of GFG included, but were not limited to, evaluating potential capital transactions, rendering financial advisory and investment banking services, and acting as the exclusive dealer for a rights offering.

We have learned that during the course of KBW's representation of GFG and while KBW was in the process of raising capital for GFG, and while KBW was acting in the nature of a fiduciary, KBW had established a significant short position in GFG stock. This position was held by KBW itself, and not on behalf of any KBW client.

Of course, it is highly unusual for an investment banking firm to short-sell the shares of a client they are currently in the process of advising, from whom they are receiving confidential information and for whom they are engaged to raise capital. Because of this highly irregular action by KBW, we must insist that you provide us with a complete explanation of the circumstances surrounding the short sale, information regarding any other trading in GFG stock

DUANE MORRIS LLP   A DELAWARE LIMITED LIABILITY PARTNERSHIP                                              HERSH KOZLOV, RESIDENT PARTNER
1940 ROUTE 70 EAST, SUITE 200   CHERRY HILL, NJ 08003                          PHONE: +1 856 874 4200   FAX: +1 856 424 4446

Mitchell B. Kleinman
June 27, 2011
Page 2

**Duane Morris**

by KBW, and the identity of all persons involved in all such trading, and any recommendation by KBW to others with regard to equity or debt positions in GFG.

Thank you for your prompt attention to this matter. I look forward to hearing from you.

Very truly yours,

DUANE MORRIS LLP

Hersh Kozlov

HK:sb

cc: Kenneth L. Tepper, Liquidation Trustee

DM1\2707206.1

A-0008

 **KEEFE, BRUYETTE & WOODS**

**Mitchell Kleinman**
Executive Vice President
General Counsel

212.887.6788
800.966.1559
Fax 212.397.9347
mkleinman@kbw.com

July 14, 2011

Hersh Kozlov
Duane Morris LLP
1940 Route 70 East, Suite 200
Cherry Hill, NJ 08003

Dear Mr. Kozlov:

I have received your letter of June 27, 2011. Without intent to comment on the content of your letter, I want to inform you that it is the policy of this company not to provide information of the nature you have requested other than upon valid service of an enforceable subpoena, court order or similar document.

Very truly yours,

Mitchell Kleinman

# Matusky, Patrick

| | |
|---|---|
| **From:** | McGraw, Kathleen R. on behalf of Matusky, Patrick |
| **Sent:** | Thursday, February 23, 2012 5:00 PM |
| **To:** | 'Kavaler, Thomas J.' |
| **Cc:** | Kozlov, Hersh; 'Morris, Lee'; Steigerwald, James H.; 'dapice@sbep-law.com'; 'Suvari, Kate' |
| **Subject:** | RE: Tepper v. Keefe Bruyette & Woods, Inc. et al. |
| **Attachments:** | Proposed Discovery Plan and Joint Status Report.DOCX |

Dear Mr. Kavaler,

Pursuant to the Court's Orders of December 1, 2011 and December 12, 2011, and in follow up to our conference last Wednesday, I am enclosing a draft Proposed Discovery Plan and Joint Status Report.

I call to your attention that we have included in item 6.B. of the Joint Status Report a request that the limit on the number of depositions that may be taken under Fed. R. Civ. P. 30(a)(2) be increased from 10 to 20 per side. Although the matter of expanding the limit on depositions was not specifically raised during the conference, I believe the need to do so was implicit in our discussion and agreement that a period of a year would be appropriate for completion of fact discovery. We have included in item 6.B. reasons we believe the deposition limit should be increased. If you wish to discuss this further, please let me know.

I also wish to follow up on that aspect of our discussion last Wednesday regarding mediation, and, in particular, your suggestion that you and your clients would be willing to consider informally providing information and documents in order to facilitate an early mediation, if we would provide a list of what we believe we need. In this regard, please be advised that we would be willing to participate in mediation at a mutually convenient time and place before a mutually acceptable mediator after our receipt of the following information from KBW with supporting documentation and an appropriate certification of completeness:

> Every trade made or transaction engaged in by KBW, or any of its affiliates, for their own accounts in any GFG security, including, but not limited to, any purchase or sale, short or long transaction, put, call or option in any GFG security, or any other transaction involving any GFG security.

> Every trade made or transaction engaged in by any natural person who is or was an officer, director or employee of KBW, or any of its affiliates, in any GFG security, including, but not limited to, any purchase or sale, short or long transaction, put, call or option in any GFG security, or any other transaction involving any GFG security.

> Every trade or transaction recommended, counseled, advised, or suggested by KBW, or any of its affiliates, or any officer, director or employee of any of them, to another with respect to any GFG security, including, but not limited to, any purchase or sale, short or long transaction, put, call or option in any GFG security, or any other transaction involving any GFG security.

> Every trade or transaction executed or effected by KBW, or any of its affiliates, or any officer, director or employee of any of them, with respect to any GFG security, including, but not limited to, any purchase or sale, short or long transaction, put, call or option in any GFG security, or any other transaction involving any GFG security.

> All KBW research reports involving any GFG security.

Documents identifying which investors KBW introduced to GFG as part of its capital raising efforts in 2008 and how much those investors invested in GFG.

A description of the work KBW did to justify all fees it received from GFG in 2008.

All communications between KBW and GFG about the amount of KBW's fee.

Any internal memoranda addressing the amount of KBW's fee on the GFG engagement in 2008.

We look forward to your further communications in regard to these matters.

Very truly yours,

**Patrick Matusky**
Partner

**Duane Morris LLP**
Suite 200
1940 Route 70 East
Cherry Hill, NJ 08003
P: 856.874.4210
F: 215.405.2966

pmatusky@duanemorris.com
www.duanemorris.com

Please consider the environment before printing this email.

2

A-0011

# Matusky, Patrick

| | |
|---|---|
| **From:** | Kavaler, Thomas J. <tkavaler@cahill.com> |
| **Sent:** | Tuesday, February 28, 2012 6:19 PM |
| **To:** | Matusky, Patrick |
| **Cc:** | Kozlov, Hersh; Steigerwald, James H.; Morris, Lee; dapice@sbep-law.com; Suvari, Kate |
| **Subject:** | RE: Tepper v. KBW--Propsosed Discovery Plan and Joint Status Report |

We are likewise mindful.

Our plan is to get our redline of your draft back to you tomorrow morning, as early as technology will allow. That will allow us all a couple of days for further discussions if they are needed and the possibility of one final turn before you (and I believe it is you) are required to file the completed document on Friday.

So that you will not be surprised when you see our markup tomorrow, I tell you now that our clients are not interested in mediation at this time on any terms. I appreciate that I am the one who inquired about this subject, but they have reviewed your resulting submission and decided not to proceed. Accordingly, the draft we return to you tomorrow will reflect this fact.

**Thomas J. Kavaler | Partner**
Cahill Gordon & Reindel LLP
80 Pine Street, New York, NY 10005
t: +1.212.701.3406 | f: +1.212.378.2230 | tkavaler@cahill.com



**From:** Matusky, Patrick [mailto:PMatusky@duanemorris.com]
**Sent:** Tuesday, February 28, 2012 6:06 PM
**To:** Kavaler, Thomas J.
**Cc:** Kozlov, Hersh; Steigerwald, James H.; Morris, Lee; dapice@sbep-law.com; Suvari, Kate
**Subject:** Tepper v. KBW--Propsosed Discovery Plan and Joint Status Report

Dear Mr. Kavaler,

I am mindful of the Friday filing deadline. When can we anticipate your response?

**Patrick Matusky**
Partner

**Duane Morris LLP**
Suite 200
1940 Route 70 East
Cherry Hill, NJ 08003
P: 856.874.4210
F: 215.405.2966

pmatusky@duanemorris.com
www.duanemorris.com

A-0012